JAMES H. CARR

*v.*

SIMEON K. MINER.

| 42 | 179 |
| 152 | 617 |
| 42 | 179 |
| 52a | 348 |
| 42 | 179 |
| 98a | [2]146 |
| 42 | 179 |
| 99a | [1]561 |
| 42 | 179 |
| 196 | [2]275 |
| 42 | 179 |
| 114a | [2] 28 |

1. SECONDARY EVIDENCE — *to prove the contents of papers in another suit — what is sufficient proof of loss.* As a foundation for introducing parol proof of the contents of a bill and answer in a suit in chancery, the deputy clerk of the court in which the cause was tried, testified that he had, during the trial on which the evidence was desired, as well as at a previous term, carefully examined the boxes in which the papers of the term, at which the chancery cause was heard, were placed, and could not find the papers of that case, and did not think they were in his office. The deputy showed a receipt for the papers given by a former attorney of the party against whom they were sought to be given in evidence. That attorney said he had never returned the papers to the clerk's office, but had handed them over to another attorney, his successor in the case on trial; that he had just searched in his own office and could not find them. The last attorney, to whose hands the papers seemed to have been traced, said he had never seen them. This was sufficient proof of loss to admit secondary evidence of their contents.

2. PAROL EVIDENCE — *to contradict a receipt.* A letter, stating that the writer had collected a certain sum of money for the party to whom it was addressed, is nothing more than a receipt, and may be explained or contradicted by parol evidence, by showing that a less sum was in fact received.

3. ESTOPPEL — *in such case.* But if the party for whom the money was said to have been collected, in acting upon the statement in the letter as to the amount collected, had lost the security he held against his debtor, then the one making the statement would be estopped from showing that he had received a less sum.

4. FRAUD, *in obtaining a judgment — what constitutes.* It is not every act of bad faith, duplicity, or even untruth, in procuring a judgment, that constitutes such fraud as will authorize a court, in a collateral proceeding, to hold the judgment fraudulent and void.

5. So, where a defendant in a suit pleaded a judgment which he had recovered against the plaintiff, as a set-off, and the plaintiff alleged the judgment was obtained by fraud, it appeared the party recovering the judgment represented to the attorney of the defendant in that suit, pending the same, that he should seek to recover only for a certain specified item, and on the trial did not attempt to prove that item, but directed his proof to other items, upon which he recovered; the attorney of the defendant therein stating that he went to trial unprepared to defend against the items recovered upon, by reason of such false representations. A jury found there was no fraud in obtaining the judgment, and the court refused to disturb the verdict.

6. INTEREST — *at what rate recoverable.* Where one, who has collected money for another, agrees verbally to pay ten per cent interest thereon, in a suit to recover the money, interest at that rate should be allowed.

7. PRACTICE — *ground for new trial obviated by concessions from the opposite party.* Where the plaintiff in a suit, who has a verdict returned in his favor, asks a new trial on the ground that the verdict is too small, the defendant may obviate the alleged error, if the amount for which the verdict should have been found can be ascertained by computation, by agreeing that a judgment may be entered against him for the proper amount.

8. But such a practice should be permitted only in a clear case.

WRIT OF ERROR to the Circuit Court of Jo Daviess county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

This was an action of assumpsit, brought in the court below by James H. Carr against Simeon K. Miner. The declaration contains three special counts upon a letter written by the defendant to the plaintiff, in which the former admitted he had received the sum of $1,800 belonging to the latter. The common counts, also, were added. The defendant pleaded, first, the general issue; second, a plea of set-off for services rendered by the defendant as agent for the plaintiff, and for money lent, money had and received and for goods sold and delivered; third, a plea setting up a judgment recovered by the defendant against the plaintiff for $532.57, and relying upon the same as a bar to so much of the plaintiff's demand, and, fourth, a plea to which a demurrer was sustained. To the first special plea the plaintiff replied a former recovery, as an estoppel. To the second special plea, *nul tiel record.* Subsequently, the defendant withdrew his plea of set-off, and amended his second special plea so as to make it a plea of set-off of the amount of the judgment.

The plaintiff replied to this amended plea, that the judgment therein sought to be set off was obtained by fraud.

Upon these issues the cause proceeded to trial. The plaintiff gave in evidence the following letter:

"WARREN, Dec. 12, 1859.

"FRIEND CARR:

"I have taken $1,800 on your Tisdal matter. I looked the matter all over, and I thought it best to take the money. Champ thought you would have trouble with them. Tisdal has given up. There is a good many judgments against them for that property, that he took off. I looked the matter all over in all its bearings. I can tell you all about it when you come. Tisdal and Meyers is willing to pay your interest up to the first of Nov. I have not settled every thing, but just taken the $1,800. I have loaned a part on short time, and can loan the balance; but I could do better to loan on a longer time. Let me hear from you soon.

"Yours in haste,
"(Signed)                S. K. MINER."

Here the plaintiff rested his case.

The defendant then introduced in evidence the record of a judgment obtained at the March Term, 1864, of the Jo Daviess Circuit Court, by him against the plaintiff, being the same set up in the second special plea.

*Daniel Sinclair*, testified on behalf of the defendant as follows: I know the parties to this suit, and heard the letter offered in evidence, by the plaintiff, read; knew about the settlement of the claim of Carr against Tisdal, made by the defendant; was present when the settlement was made; had been and was acting as Tisdal's agent; the claim of Carr was settled by Miner for $1,800, $1,100 of which was to be paid in cash, and $700 in the note of Charles Cole; was present till the settlement was made; I think this was some time in the month of December, 1859.

*Cross-examined :* I know nothing at all about the letter read in evidence; I never saw it before; there were no persons present when the settlement was made but N. W. Meyers, S. K. Miner and myself; I was the agent for Mr. Tisdal and felt an interest in the matter and was glad to get it settled; I do not know that there was ever one dollar in money paid; I did not read the note, but saw Cole's name signed to it in a large hand; Meyers said it was a note on Charles Cole for $700; I knew his signature; I saw the note in N. W. Meyers' hands; I went away when the contract was made; this was the only claim that Carr had, of that kind, against Tisdal, to my knowledge; Tisdal had borrowed other sums of money from Carr, at different times; he borrowed $100 and $200, and at one time he got $600, and at another time he got $500; the five hundred was secured by a deed of trust on other property, near Warren; I know that the above sums of money were all the money Tisdal borrowed of Carr, because I kept Tisdal's books, and Tisdal always had whatever money he borrowed, put down.

*Re-examined :* The money was secured by a deed of trust from Tisdal to Carr, and covered the Tisdal Stone Hotel in Warren; Meyers had bought the property and was to pay this note and deed of trust for Tisdal; this was the only claim Carr had against Tisdal, secured on the Stone Hotel across the street.

The defendant then proposed to prove by parol the contents of the bill and answer in a suit in chancery in the Circuit Court, instituted by N. W. Meyers against James H. Carr and one Payne, and, to lay the foundation therefor, introduced the following testimony to prove the loss of the papers in that suit.

*T. R. Bird,* called by the defendant, testified: I am deputy and acting clerk of this court, and have the charge of all the records and papers of the same; at the last term of this court I carefully examined in my office for the papers in the case of *Meyers* v. *Carr and Payne,* and I could not find the same; since this trial commenced I have again carefully examined among the papers in my office for the papers in said case, but could not find them.

*Cross-examined :* I have not looked among all the papers in my office ; I have only looked in the tin boxes in which the papers for the term, at which the said decree was obtained, were put away ; I do not think the papers are in my office.

*J. K. Haynes* testified : I am also a deputy clerk of this court, and since this trial commenced, I have carefully examined the tin boxes in which the papers of the term at which the decree in the case of *N. W. Meyers* v. *Carr and Payne* was obtained, but could not find them.

*Cross-examined :* I did not examine anywhere else only in the tin boxes where the papers of the term were put away.

Defendant recalled *T. R. Bird :* I keep a receipt book in which parties taking papers out of my office give receipts for the same ; which receipts are usually canceled when the papers are returned. Witness then produced the said receipt book and referred to a receipt for said papers, by E. A. Small, dated on the third day of October, A. D. 1861, which was uncanceled.

*E. A. Small* testified : I got the papers in the case of *N. W. Meyers* v. *Carr and Payne*, at the date of said receipt ; I was then the attorney for James H. Carr ; I afterward turned said papers over to T. A. Green, when he became Mr. Carr's attorney ; Mr. Green came to my office and got said papers ; I have searched in my office for said papers, but cannot find them ; I have not got them ; did not return them to the clerk's office ; I have made the search in my office since this trial commenced, and since I was called as a witness.

*T. A. Green* testified for plaintiff : I have never, at any time, seen the papers in the chancery case of *N. W. Meyers* v. *Carr and Payne ;* they never came into my hands in any way. It was the papers in the case of *S. K. Miner* v. *J. H. Carr* that Mr. Small turned over to me. I went to Mr. Small's office and got the papers in the last mentioned case, soon after I became Mr. Carr's attorney ; but I never got the papers in the case of *Meyers* v. *Carr and Payne*, from Mr. Small, or any one else, and have never seen said papers in my life. Mr. Carr has been urging me to get said papers in the chancery case of *Meyers* v. *Carr and Payne*, ever since I have been his attorney ; and I

looked in the clerk's office, about three months ago, but did not find them. Mr. Carr considered them of great importance to him in the present case, as the deposition of S. K. Miner, defendant in this case, was taken in that case, and explained this whole transaction; and Mr. Carr wanted me to get said deposition for evidence, in this case.

*James H. Carr* testified for plaintiff: I have been urging Mr. Green to get the papers in the chancery case of *Meyers* v. *Carr and Payne*, ever since he has been my attorney, but he has been unable to get said papers. I considered the papers in that case of great importance to me, on account of the deposition of Miner, which is among them. His deposition explains the whole matter of this case, and I wanted it to offer as evidence in this case. I have not got said papers in my possession, nor seen them, since Mr. Green has been my attorney. Upon the above testimony, as to the loss of said papers, the court allowed defendant to give verbal evidence of the contents of the same; and thereupon, *M. Y. Johnson* testified: I was the attorney for N. W. Meyers in the chancery case of *Meyers* v. *Carr and Payne*. The bill in said suit set out that Carr had loaned Tisdal money, and as security therefor had taken a deed of trust on the stone hotel, in Warren, and the stone stable connected therewith. Payne was the trustee. Meyers had purchased the property subject to this incumbrance. This suit was to enjoin Carr and Payne from selling the property under said deed of trust. Meyers alleged that he had paid the whole amount due on the same to Miner as the agent of Carr; and Carr denied that Miner had ever been his agent at all; and claimed in his answer in the case, that there was due him on the same $2,200, or $2,300. Meyers alleged that he had paid Miner $1,800; $1,100 in money, and $700 in notes. There was one note for $308 on Charles Cole, and the rest of the $700 was in other notes. Meyers relied on Miner's receipt for proof that he had paid $1,800; $1,100 was paid to Miner in money, and the rest in notes. The decree in the case states what order was made, as to the $700 in notes. The $700 mentioned above was paid to Meyers, by Miner, afterward, in my presence.

To the admission of the above verbal evidence, as to the contents of the papers in the chancery case of *N. W. Meyers* v. *Carr and Payne*, the said plaintiff then and there objected, and, the court overruling the said objection and allowing said testimony to go to the jury, the said plaintiff then and there excepted to the said ruling of the court.

The defendant then read in evidence the decree in the above case of *Meyers* v. *Carr and Payne*.

L. P. Woodworth, A. M. Jones and one Goding, then testified on behalf of the defendant, that they heard the plaintiff say, in the fall of 1861, that the defendant had no money of his in his hands.

The plaintiff then offered the following rebutting testimony:

*E. A. Small* testified: When I became Mr. Carr's attorney, and after Miner had commenced suit against Carr, I asked Miner what his object was, in doing so; and he said Carr commenced suit against him in Chicago, and that he did not want to go to Chicago to attend court, and that he had commenced suit here to get judgment for his items of offset spoken of when he and Carr were trying to settle, and Carr could get judgment against him in Chicago, for whatever he owed him. The items then spoken of were $40 paid to Rawlins and Sheean for attorney fees, and the other was for a due bill which Miner had given Carr for $130, in consideration that Carr would obtain a loan of money for Miner, at a less interest than — per cent; which due bill Miner had paid Carr, and then wanted Carr to pay it back. These were the only two items that Miner claimed that Carr owed him, and there was no dispute at all about the $40. The only matter of dispute was about the $130. I was willing to give Miner judgment for the $40, and I distinctly understood, from Miner, that the only matter to be litigated, was the $130. I cannot say that I was misled myself, by Miner's statements. I wrote to Scates, McAllister & Jewett, Carr's attorneys in Chicago, and informed them of what took place between Miner and myself, and asked their advice, and they wrote me to file the general issue and go to trial. I should never have gone to trial

in the case, without being ready to make a defence, had it not been for Miner's statements, that he only wished to recover a judgment for the items before spoken of. Miner was a friend of mine, and I had confidence in his word and honesty, and distinctly understood, from Miner, that the only item to be litigated, was the $130; and that he did not want or expect to recover judgment against Carr for any thing else. Had I known or suspected what Miner was up to, I should never have gone to trial, in the case, without being ready for a defense. I had also informed Mr. Carr of the understanding, and he had returned to New York. Miner did not attempt, at the trial, to recover judgment for the item of $130 mentioned; but obtained his judgment on other and different items of account,— for services, for costs he claimed to have paid the clerk of this court, and for $370 he claimed to have paid Daniel Sinclair for Carr. Miner had never before, ever mentioned, or claimed, that Carr owed him a dollar for any of the items for which he recovered judgment in that case (only the $40 paid Rawlins & Sheean), when he and Carr were trying to settle, or afterward, and went, unto that time, with the firm belief that the only matter to be litigated was the $130 before spoken of. This was my firm belief, from Miner's statements, and my understanding.

*Joseph Dobler* testified : On the 3d of April, 1861, as the agent of Mr. Carr, I presented a demand and an order to Mr. Miner.

The following is the demand, to wit :

"WARREN, April 3d, 1861.
" Mr. S. K. MINER :

" Sir, I demand of you to pay and deliver to me or my agents, P. & J. F. H. Dobler, all moneys that you have otherwise appropriated, that belongs to me, and all the papers that you have in your posssesion, or have the control of, that belongs to me.
"(Signed)          JAMES H. CARR."

When the said demand was read, Miner said he was going to Galena and would be back in a few days, and would then see

about the matter. After he got back, he said he was owing Carr $1,100 with ten per cent interest from some time in December, 1859, and that he agreed to pay 10 per cent interest on the same, and that he had an offset of $40 paid to Rawlins & Sheean; I do not recollect what he said about the $130; he said it was on a different contract; he said that was all the claims he had against Carr, but he wanted us to take a one hundred dollar note on Sinclair; Miner said, Carr agreed to take the note; we did not take the note; I told him we would receipt to him for any amount of money he would pay; he said unless I would receipt in full he would not pay any thing; Mr. Carr recovered ten per cent interest and Miner said that was what he agreed to pay; Miner said there would be a fight over it, and there might as well be something to fight for; after this I had no more talk with Miner about it, until the next fall; Miner came to me and asked me if Carr was going home the next day; Miner said he was still owing Carr the same amount as before; and asked if Carr would allow him the $40, and the $130 offset; at the last term of this court, last March, 1864, he said he still owed Carr the same claim; Miner asked me if Carr would settle; he asked if Carr would allow him the $40, and the $130; he then asked if Carr would allow him that judgment; I told him I did not think he would; he then asked if he would allow him any part of it; I told him I did not think he would, except the $40; this was the last March Term, of this court, 1864.

*Cross-examined:* I was authorized to give a receipt for all the money paid; Miner said he would not pay the order unless I would receipt it in full; I would have receipted in full for the order; this was the same order above mentioned; I could not receipt for more than the order; I do not think that I did offer to receipt for more than the order; this order was for $1,100 with ten per cent interest, from about the first of December, 1859, and one other item which I have forgotton.

Defendant then offered the said written order in evidence, to wit:

"WARREN, April 2d, 1861.
"Mr. S. K. MINER:

"Please to pay to Messrs. P. & J. F. H. Dobler, ($1,333.33) thirteen hundred and thirty-three dollars and 33–100, and charge the same to me.

"(Signed)          JAMES H. CARR."

To the introduction of said order the plaintiff objected, and the court overruled the same, whereupon the plaintiff excepted.

*David Sheean,* testified: I am of the firm of Rawlins & Sheean; Carr was owing us a fee, and Miner said we had better get an order on him for our fee, as he had money in his hands belonging to Carr; we got an order on Miner who paid us forty dollars; this was soon after the chancery suit of *Meyers* v. *Carr and Payne.*

The above was all the testimony offered by either party on the trial of said case.

The jury returned a verdict for the plaintiff for $752.79.

The plaintiff thereupon moved for a new trial; but the defendant consenting that a judgment might be entered against him for the sum of $996.75, the court overruled the motion for a new trial and entered judgment accordingly.

The plaintiff excepted, and brings the cause to this court by writ of error.

The errors assigned, are as follows:

First, the court erred in admitting parol evidence of M. Y. Johnson, as to the contents of the record in the chancery suit of *Myers* v. *Payne and Carr;* second, in overruling the motion for a new trial; third, in making an agreement with the defendant as to the damages, and allowing defendant to raise the judgment a small amount, but not to the amount claimed by the plaintiff, without the consent of the plaintiff.

Mr. T. A. GREEN, for the plaintiff in error.

Mr. GEORGE C. CAMPBELL, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit instituted by James H. Carr, in the Jo Daviess Circuit Court, to the August Term, 1863, against Simeon K. Moore. The declaration contained three special counts, on a letter written by defendant to plaintiff, and the usual common counts. The defendant filed the general issue, and three special pleas. The first was a plea of set-off, for services as agent of plaintiff, and for money lent, goods sold and delivered, and for money had and received, etc.

The second special plea set up and relied upon a judgment for $532.57, obtained by the defendant against the plaintiff, as a bar to so much of plaintiff's cause of action. To the third special plea, a demurrer was sustained. Plaintiff filed a replication to the first special plea, of a former recovery, as an estoppel. To the second special plea he filed a replication of *nul tiel record*. Defendant afterward withdrew his plea of set-off, and amended his second plea, so as to make it a set-off of the amount of the judgment. Plaintiff filed to that plea a replication, that the judgment was obtained by fraud. Issues were formed on these pleas, and a trial was had before the court and a jury, and a verdict was returned in favor of plaintiff for $752.79. Plaintiff entered a motion for a new trial, which, upon the defendant agreeing that the verdict should be raised to $996.75, was overruled, and judgment was rendered for plaintiff for that sum. Plaintiff below, to reverse the judgment, brings the case to this court on error. It is insisted that the court below erred in permitting Johnson to testify to the contents of a bill and answer alleged to have been lost; the bill had been filed, and the case litigated between plaintiff in error and one Meyers, in the court below. It is insisted that the loss of the bill and answer was not sufficiently proved to authorize oral evidence of their contents.

It appears that the clerk and his deputy had made diligent search in the office of the clerk for the papers. They state that the papers of the term, at which the cause was tried, had a proper place of deposit in the office, and that they had searched at

that place, as well as all others where they supposed they might be found. One of the deputies testified that he had searched the clerk's office at the previous as well as at that term of the court, but was unable to find the papers. The clerk produced a receipt book, in which attorneys wrote and signed receipts for papers, when they took them from the office, from which it appeared, E. A. Small, on the 3d of October, 1861, had received the papers of the clerk. It also appears that Small was then the attorney of the plaintiff in error. Small testified that he delivered the papers to Green, who subsequently became the attorney for plaintiff in error. He also testified that he had made search in his office during the progress of the trial, and was unable to find them, and that they were not in his possession. Green testified that he had never received the papers, and thinks that Small handed to him the papers of another case, and not the papers in the case of *Carr* v. *Myers.* We think that this evidence sufficiently proved the loss of the papers to warrant the admission of oral evidence of their contents. The case of *Rankin* v. *Crow,* 19 Ill. 625, is referred to as laying down the rule, and it is supposed this evidence does not bring this case within that. That case, if it does not lay down the rule too strongly, certainly carries it to the utmost verge. But we think that this case comes up even to the rule as there announced. It seems to be clear, beyond reasonable doubt, that the papers were not in their proper place of depository, but they were traced to the hands of plaintiff's attorneys, and their proving that they were not in their hands, sufficiently established their loss, and warranted the reception of the evidence. It, however, was not very material, inasmuch as the decree contained the evidence material to the issue. It seems that this suit was brought to charge Miner with eighteen hundred dollars, collected by him of Meyers, of money the latter owed plaintiff in error. He had denied the authority of defendant in error to collect the money of Meyers, and the latter filed a bill to enjoin plaintiff in error from proceeding to collect the money by a sale of the mortgaged premises.

The decree finds that defendant in error had collected of

Meyers only eleven hundred dollars, and made the injunction perpetual as to that amount, and dismissed the bill as to the remaining seven hundred dollars. Defendant, in his letter to plaintiff in error, says he had received $1,800 of Meyers; but a witness, who was present at the time, says, that he received $1,100 in money; and a note on call for seven hundred dollars, and the decree finds that defendant in error returned this note to Meyers. This, then, left plaintiff in error with a complete remedy on the mortgage for the collection of the seven hundred dollars of Meyers, and his remedy for the eleven hundred dollars against defendant in error, and, for aught that appears, he may have received it, or may have his remedy against Meyers to that extent. This, then, warranted the jury in finding that defendant was only liable to account to plaintiff in error for eleven hundred dollars received of Meyers. The letter, like a receipt, which it was, is subject to explanation, and the jury were warranted in determining, from the evidence, how much he had received. Had the evidence shown that plaintiff in error, acting upon the statements contained in the letter, had lost the security he held against Meyers, then defendant would have been estopped from showing that he had received less than the amount stated.

We now come to the consideration of the question of fraud in procuring the judgment pleaded as a set-off by defendant in error. There may be grave doubts, whether the facts relied on in this case constitute such a fraud as will vitiate a judgment previously rendered in another case. The conduct of defendant in error was such as authorized, if it did not require, the court below to have granted a new trial, if his acts had been proved to the court on the trial of that case. But it is not every act of bad faith, duplicity and even untruth, that will constitute such a fraud as will authorize a court, in a collateral proceeding, to hold it fraudulent and void. But in this case, plaintiff in error has had the benefit of his replication. Proof has been adduced under it and passed upon by a jury, and they have found that there was not fraud in obtaining the judgment, and we are not prepared to say that it is such a fraud as should

have avoided the judgment. The evidence tends to show that defendant in error did not act with candor and frankness in attempting to settle with the attorney of plaintiff in error; and, while he had fully established his character for shrewdness, he has not added largely to his reputation for truthful candor and fairness in his dealings. It was again urged, that the court erred in overruling the motion for a new trial. It seems, the jury allowed the eleven hundred dollars and interest thereon at six per cent to plaintiff in error, and from that sum they deducted the judgment in favor of defendant in error, and found the balance as their verdict. The evidence showed that defendant always recognized his liability to pay ten per cent interest, and under the statute he could bind himself for that rate by agreement. This the jury should have allowed. The court below, it seems, took this view of the case, and intimated that· he would grant a new trial unless defendant in error would consent to increase the verdict to $996.75, which seems to be about the difference in the two rates of interest. To this defendant in error consented and the motion was overruled. If there were no other grounds requiring a new trial to be granted, and we see none, then, when that was corrected, there was no error in overruling the motion. It was a case in which the amount could be calculated with certainty when the basis was found. The practice is one that should be sparingly indulged, and should never be adopted except in clear cases.

The judgment of the court below must be affirmed.

*Judgment affirmed.*