(No. 62660.—

(No. 62803.—

J. I. CASE COMPANY, Appellant, v. McCARTIN-McAULIFFE PLUMBING & HEATING, INC., Appellee.—STEVEN DUKES, Appellant, v. J. I. CASE COMPANY, Appellee.

*Opinion filed June 16, 1987.—Modified on denial of rehearing December 21, 1987.*

GOLDENHERSH, J., took no part.

Heyl, Royster, Voelker & Allen, of Urbana (James C. Kearns and Bruce L. Bonds, of counsel), for appellant

and appellee J. I. Case Company.

Craig J. Causeman and Howard W. Small, of Thomas, Mamer & Haughey, of Champaign, for appellee McCartin-McAuliffe Plumbing & Heating, Inc.

Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus and Jeffrey W. Tock, of counsel), for appellant Steven Dukes.

John E. Guy, of Chicago (Querrey, Harrow, Gulanick & Kennedy, Ltd., and David B. Mueller, of Cassidy & Mueller, of Peoria, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE MILLER delivered the opinion of the court:

Steven Dukes brought a product liability action against J. I. Case Company for injuries he sustained while working with machinery manufactured by Case. Case in turn brought a third-party action for contribution from Dukes' employer, McCartin-McAuliffe Plumbing & Heating, Inc. (McCartin). Following a jury trial in the circuit court of Champaign County, Dukes was awarded a net amount of $148,750 in compensatory damages in his product liability action. In Case's third-party action for contribution, the jury found McCartin liable for a little more than half of the reduced award. Dukes and McCartin appealed; with one justice dissenting, the appellate court affirmed the judgment in Dukes' action, on the condition that Case consent to an *additur*, and reversed the judgment against McCartin on Case's claim for contribution. (137 Ill. App. 3d 562.) We allowed Dukes' and Case's petitions for leave to appeal (103 Ill. 2d R. 315(a)) and consolidated the matters for oral argument and disposition.

The accident at issue occurred on December 1, 1978. On that day Dukes was employed by McCartin on a crew that was installing underground gas pipes in Danville for the Illinois Power Company. The work crew was using a Fleetline 40+4 trencher with a Hydra-Borer attachment; both pieces of equipment were manufactured by Case. The Hydra-Borer was used to drill small-diameter holes in the earth. As Dukes was attempting to climb out of the trench in which he was working, he was severely injured when the rotating auger, or rod, of the boring machine caught his clothing. The accident resulted in the traumatic amputation of one testicle and the loss of skin on the other testicle and on his penis; eventually his other testicle was surgically removed.

Dukes brought a product liability action against Case, seeking compensatory and punitive damages. Dukes asserted that the trenching machine, with the borer attachment, was defective because it was not equipped with "anchor guides," which could be used to direct the course of the auger. At trial the parties presented extensive evidence on the work procedures followed by Dukes and other members of the McCartin crew. The parties also introduced evidence on the availability of accessory equipment that could have been used with the trencher and borer. Both Dukes and Case presented expert testimony regarding the safety of the machinery. At the conclusion of the trial, the court directed a verdict for Case on the punitive damages count. The count seeking compensatory damages was decided by the jury, which found Case liable and determined the total amount of Dukes' damages to be $175,000. The jury reduced that sum by 15%, however, because of Dukes' misuse or assumption of the risk, leaving a net award of $148,750.

Case brought an action against McCartin under "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1985, ch. 70, pars. 301 to 305) (Contribu-

tion Act). Case asserted three grounds for recovery from McCartin: negligence, misuse, and assumption of the risk. Finding against McCartin, the jury determined that McCartin was responsible for 52.95% of the damage award and Case for 47.05% of the award. Case had also sought contribution from Illinois Power, but the jury found in favor of the latter company.

Dukes appealed the judgment in his action against Case, and McCartin appealed the judgment on Case's claim for contribution. In Dukes' appeal, the appellate court agreed with the trial judge that the evidence in this case did not warrant an award of punitive damages. The appellate court agreed with Dukes, however, that Case had failed to establish its defenses of misuse and assumption of the risk. But the court believed that the jury's consideration of those defenses would have affected the apportionment of liability between the two parties, Dukes and Case, rather than the computation of damages. Accordingly, the appellate court believed that an *additur* by Case equal to the 15% reduction made by the jury from Dukes' award would be an appropriate alternative to a new trial. With respect to Case's third-party action against McCartin for contribution, the appellate court rejected all three grounds on which Case sought to base its claim. The court concluded that negligence could not be used as the basis for a contribution claim by a party sued in strict liability, that Case had not properly pleaded an action for misuse, and that the evidence was insufficient to establish McCartin's assumption of. the risk. Accordingly, the appellate court remanded Case's contribution action to the circuit court for entry of a judgment in McCartin's favor.

## I

In his appeal to this court, Dukes raises three issues. Dukes first argues that the trial judge erred in dismiss-

ing the count in his complaint seeking punitive damages from Case. He also contends that the jury's determination of damages was inadequate. Finally, he argues that the appellate court was mistaken in attempting to cure the trial errors through the device of an *additur*.

Dukes first argues that the trial court erred in taking from the jury that part of his complaint seeking punitive damages from Case. Applying the standard proposed by Dukes—whether the manufacturer's conduct evinced flagrant disregard for public safety (see *Moore v. Remington Arms Co.* (1981), 100 Ill. App. 3d 1102)—the appellate court did not believe that the evidence in this case warranted an award of punitive damages.

Dukes based his product liability action on Case's failure to provide anchor guides as standard equipment on the machinery, and on its failure to provide a covering for the rotating auger. In seeking an award of punitive damages, Dukes alleged that Case knew that the failure to supply the anchor guides as standard equipment would result in injury and that Case chose to sell the devices as optional equipment in an attempt to increase its profits.

Whether the circumstances in a particular case may justify an award of punitive damages is a question of law. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 211; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 87.) In *Kelsay* the court said:

> "It has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. (*Consolidated Coal Co. v. Haenni* (1893), 146 Ill. 614.) Where punitive damages may be assessed, they are allowed in the nature of pun-

ishment and as a warning and example to deter the defendant and others from committing like offenses in the future. (*Eshelman v. Rawalt* (1921), 298 Ill. 192, 197.)" 74 Ill. 2d 172, 186.

We agree with the appellate court and the trial judge that the circumstances in this case did not warrant an award of punitive damages. Case had sold some 5,000 of the machines in the period before Dukes was injured. Although Dukes offered evidence of two other accidents involving the same machinery as that used here, the trial judge found that the evidence was inadmissible, and Dukes does not challenge that ruling here. Moreover, Case made the anchor guides available as optional equipment, and they were therefore available for purchase by those companies whose anticipated manner of using the equipment would make them necessary or useful additions. We do not believe that Case's conduct here was the type envisioned in the standards set out in *Kelsay* or in *Moore*.

Dukes next argues that the amount of compensatory damages ascertained by the jury was manifestly inadequate, bore no reasonable relationship to his injury, and was the apparent result of trial error. At trial Dukes presented evidence that his special damages—his lost wages and medical expenses—were between $20,000 and $30,000. The jury determined the total of Dukes' damages to be $175,000 and therefore could have allotted no more than $155,000 for his general damages. At the time of the accident Dukes was 21 years old, unmarried, and childless; the injury has rendered him sterile. Other evidence presented at trial showed that Dukes was able to engage in sexual intercourse within two months of the accident. Pain persisted in his remaining testicle, however, and about a year and a half after the accident he elected to have it surgically removed, against the advice of his urologist. The testicle was found to be atrophied

and scarred, though it was producing testosterone. Following that, Dukes received injections to compensate for the hormonal loss. Although different awards might also have been warranted by the evidence, we do not believe that we should substitute our view for that of the jury, who heard the evidence, or that of the trial judge, who considered and denied Dukes' post-trial motion. See *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442.

Dukes also argues that the amount of the jury's verdict was attributable to trial error. The jury was instructed on two of Case's affirmative defenses—misuse and assumption of the risk—and also received an instruction on Dukes' duty to exercise due care. The appellate court agreed with Dukes that the affirmative defenses should have been stricken, and that the instructions should not have been used; Case does not challenge that decision here.

Relying on *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, Dukes argues that he is entitled to a new trial because of the instructional errors. The plaintiff in *Hollis* was working as a roofer and was injured when he fell through an open skylight. He brought an action under the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69), and the jury returned a $30,000 verdict in his favor. This court found the verdict inadequate, noting that the amount awarded did not cover the plaintiff's special damages. Also, the court attributed the low award to defense counsel's improper argument regarding the plaintiff's duty to exercise due care, which was not a defense to the action. The court remanded the cause for a new trial on damages only. Dukes contends that the instructional errors in this case had a similar effect.

We believe that *Hollis* is distinguishable. The action in *Hollis* was not tried under comparative principles, and the jury's verdict may therefore have represented a com-

promise, in light of the improper argument concerning the plaintiff's duty of due care. In this case, the jury first determined the sum of Dukes' damages without making any reduction for his own misconduct, and then reduced the award by an amount attributable to him. Moreover, we have held that the award was not inadequate as a matter of law. Thus, there is no reason to conclude here that the jury's initial determination of damages was tainted by trial error.

Dukes also argues that the appellate court erred in attempting to remedy the instructional errors by imposing an *additur*. The appellate court held that Case could consent to an *additur* as an alternative to a new trial. The court therefore affirmed the judgment in Dukes' action on the condition that Case agree to pay an additional amount equal to the difference between the gross and net awards determined by the jury; that is, Case would pay Dukes $175,000, which was the full amount of damages determined by the jury, without making any reduction for Dukes' own conduct.

*Additur*, though not available in the Federal courts (see *Dimick v. Schiedt* (1935), 293 U.S. 474, 79 L. Ed. 603, 55 S. Ct. 296), has been used in State courts and, indeed, may have first appeared in an Illinois case, *Carr v. Miner* (1866), 42 Ill. 179 (see Bender, *Additur—The Power of the Trial Court to Deny a New Trial on the Condition That Damages Be Increased*, 3 Cal. W.L. Rev. 1, 5 (1967)). In *Carr*, an action in assumpsit, the jury erroneously allowed the plaintiff 6% interest on his award rather than 10%, a rate that the defendant had previously agreed to pay. The defendant consented to an *additur*, and the trial judge therefore denied the plaintiff's motion for a new trial, finding no other error in the case. This court affirmed the trial judge's action:

> "The evidence showed that defendant always recognized his liability to pay ten per cent interest, and under the

statute he could bind himself for that rate, by agreement. This the jury should have allowed. The court below, it seems, took this view of the case, and intimated that he would grant a new trial unless defendant in error would consent to increase the verdict to $996.75, which seems to be about the difference in the two rates of interest. To this defendant in error consented and the motion was overruled. If there were no other grounds requiring a new trial to be granted, and we see none, then, when that was corrected, there was no error in overruling the motion. It was a case in which the amount could be calculated with certainty when the basis was found. The practice is one that should be sparingly indulged, and should never be adopted except in clear cases." (42 Ill. 179, 192-93.)

A similar result was reached in *James v. Morey* (1867), 44 Ill. 352. (See also *Ross v. Cortes* (1981), 95 Ill. App. 3d 772; Comment, *Additur—Procedural Boon or Constitutional Calamity*, 17 De Paul L. Rev. 175 (1967).) We note that the application of *additur* arises here in the context of juries instructed under comparative fault principles and using computational verdict forms.

Dukes argues that the *additur* allowed by the appellate court was only an incomplete answer to the trial errors, and that it should not have been allowed over his objection. Dukes also asserts that the jury's consideration of Case's improper affirmative defenses was not limited to its apportionment of fault but rather also affected its determination of damages. In Dukes' view, unless a plaintiff is allowed to veto an *additur*, a defendant will have the incentive to inject error into a case tried under comparative principles, hoping to offer later to reinstate the "full" amount of an artificially low, error-tainted determination of damages. But in the circumstances described by Dukes, an *additur* limited to the difference between the gross and net awards simply would not be appropriate. In other circumstances, how-

ever, *additur* provides an economical means of remedying trial error committed by counsel in good faith. Moreover, just as a defendant's consent is not necessary when a damage award is found to be excessive and a plaintiff is given the choice of agreeing to a *remittitur* as an alternative to a new trial, a plaintiff's consent should not be necessary when *additur* is found to be an appropriate alternative to a new trial. Requiring the consent of both parties would make the doctrines indistinguishable from voluntary settlements.

We have already held that the jury's determination of damages, unreduced by any fault on the plaintiff's part, was not affected by trial error in giving the instructions. Because a computational verdict form was used in this case, we know the amounts that formed the bases for the jury's calculations here. The jury's initial determination of $175,000 in damages may therefore serve as a proper award, and the appellate court correctly based the *additur* on that figure. See *Fraher v. Inocencio* (1984), 121 Ill. App. 3d 12; *Walker v. Budzianowski* (1982), 103 Idaho 244, 646 P.2d 1015; see also *Cotrona v. Johnson & Wales College* (R.I. 1985), 501 A.2d 728.

## II

Case appeals the appellate court's decision reversing the judgment against McCartin in its third-party action for contribution. Case alleged three separate grounds for contribution—McCartin's negligence, misuse, and assumption of the risk—and the jury was instructed on all three theories. The jury found in Case's favor on the contribution claim; in apportioning liability between the employer and the manufacturer, the jury found McCartin responsible for 52.95% and Case responsible for 47.05% of the damages. The appellate court reversed the judgment on the contribution action, rejecting all three grounds on which the claim was brought. The appellate

court believed that negligence could not provide a basis for contribution in this case because the underlying action was premised on strict liability, that the count alleging misuse failed to state a cause of action, and that the evidence was insufficient to sustain a finding of assumption of the risk. Case argues here that all three theories were well-pleaded and were valid grounds for contribution.

As its first ground for contribution, Case alleged negligence on McCartin's part. In substance, Case asserted that McCartin had not adequately trained Dukes, provided him with safety equipment, or enforced its safety rules. The count alleging misuse was virtually identical to the negligence count, and there Case alleged, in essence, that McCartin's negligent acts and omissions amounted to misuse of the machinery. Finally, in the contribution count based on assumption of the risk, Case repeated the earlier allegations of negligence and made the additional assertions that Illinois Power had provided McCartin with drill guides produced by a different company, and that using the other equipment would have enabled the employees to start the auger without stationing anyone in the trench.

The appellate court held that a manufacturer sued in strict liability could not assert negligence as a basis for contribution from another tortfeasor. In reaching that conclusion the court relied on *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, and *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47, the group of cases in which this court overturned the rule prohibiting contribution among tortfeasors. In each of those cases a manufacturer who had been sued on a product liability theory was seeking contribution from the plaintiff's employer, and in each case the manufacturer's complaint for contribution alleged

negligence on the part of the employer. This court construed the contribution complaints in the three cases as alleging misuse and assumption of the risk and allowed the actions to proceed on those theories. The *Skinner* court said:

"Misuse of the product or assumption of the risk by a user will serve to bar his recovery (*Williams v. Brown Manufacturing Co.*, 45 Ill. 2d 418), and indemnity is not available to one who misuses the product or assumes the risk of its use (*Liberty Mutual Insurance Co. v. Williams Machine Tool Co.*, 62 Ill. 2d 77). We are of the opinion that if the manufacturer's third-party complaint alleges that the employer's misuse of the product or assumption of the risk of its use contributed to cause plaintiff's injuries, the manufacturer has stated a cause of action for contribution." 70 Ill. 2d 1, 15.

Following that lead, the appellate court here held that Case must base its claim for contribution on misuse or assumption of the risk rather than on negligence. The appellate court then went on to consider, as *Skinner* had done, whether the negligence count was sufficient to allege misuse or assumption of the risk, and the court concluded that they were not. As we have noted, the appellate court also rejected Case's separate counts alleging misuse and assumption of the risk.

Misuse is the use of a product "for a purpose neither intended nor 'foreseeable' (objectively reasonable) by the defendant" and may defeat a cause of action. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 425.) Assumption of the risk originated as a complete defense to a product liability action (45 Ill. 2d 418) and is now recognized as damage-reducing conduct (*Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104). In *Williams* the court explained, "[T]he test to be applied in determining whether a user has assumed the risk of using a product known to be dangerously defective is fundamen-

tally a subjective test, in the sense that it is *his* knowledge, understanding, and appreciation of the danger which must be assessed, rather than that of the reasonably prudent person (Restatement (Second) of Torts, sec. 496D, comment (c)) \*\*\*." (Emphasis in original.) (45 Ill. 2d 418, 430.) In excluding negligence as a ground for contribution and limiting the possible theories of recovery to misuse and assumption of the risk, the court in *Skinner* was drawing an analogy to the then-governing rules regarding recovery-barring conduct with respect to plaintiffs and indemnitees in product liability actions. See Note, *A Judicial Rule of Contribution Among Tortfeasors in Illinois*, 1978 U. Ill. L.F. 633, 648.

Contribution is now a statutory remedy in Illinois, governed by the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, pars. 301 to 305). The right to contribution arises under the Act from tort liability, and the statute apportions recovery among the contributors on the basis of their relative culpability. Section 2 of the Contribution Act says:

> "(a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.
>
> (b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." (Ill. Rev. Stat. 1985, ch. 70, pars. 302(a), (b).)

Section 3 of the Act, concerning the amount of contribution, provides:

> "The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability. How-

ever, no person shall be required to contribute to one seeking contribution an amount greater than his pro rata share unless the obligation of one or more of the joint tortfeasors is uncollectable. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability." Ill. Rev. Stat. 1985, ch. 70, par. 303.

Thus, the basis for a contributor's obligation rests on his liability in tort to the injured party. Accordingly, there is no requirement that the bases for liability among the contributors be the same. (See *Doyle v. Rhodes* (1984), 101 Ill. 2d 1.) And, as other courts have found, there is no requirement that the basis for contribution mirror the theory of recovery asserted in the original action. See, *e.g., Chamberlain v. Carborundum Co.* (3d Cir. 1973), 485 F.2d 31; *Safeway Stores, Inc. v. Nest-Kart* (1978), 21 Cal. 3d 322, 579 P.2d 441, 146 Cal. Rptr. 550; *Cartel Capital Corp. v. Fireco* (1980), 81 N.J. 548, 410 A.2d 674.

Opposing this interpretation of the Contribution Act, McCartin argues that the Act codified rather than modified the decision in *Skinner* and therefore could not have had the effect urged for it here by Case. McCartin points to this court's statement in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 8, that the Contribution Act, "as adopted in Illinois, was intended to codify the *Skinner* decision, not to diminish its scope"; the appellate court similarly relied on *Doyle* in rejecting Case's argument. The statement in *Doyle*, however, was made in the context of determining what effect, if any, the Contribution Act had on *Skinner*'s holding that the employer of an injured party could be sued for contribution. This court has never held that the legislature meant to leave intact the precise form of contribution approved in *Skinner*. Rather, the court has said that the Contribution Act "codified and clarified" the rule adopted in *Skinner*

(*Stephens v. McBride* (1983), 97 Ill. 2d 515, 521-22), and it is from that perspective that the Act must be construed.

We agree with Case that the language of the Act provides a slightly different basis for contribution from that set out in *Skinner*, and we also conclude that misuse and assumption of the risk do not readily fit within that conceptual scheme; to hold otherwise would have the effect of converting those two theories, which are used to reduce or bar recovery, into causes of action. "[T]he doctrines of contribution and comparative fault must be viewed in distinction from one another. The policy considerations which are reviewed in applying comparative fault principles between an injured plaintiff and a defendant whose liability is premised on strict liability rules are not the same as those embodied in the Contribution Act, which allows contribution based on fault, however defined, among those whose conduct contributed to cause the injury." *Pipes v. American Logging Tool Corp.* (1985), 139 Ill. App. 3d 269, 273.

The recent decision in *Hopkins v. Powers* (1986), 113 Ill. 2d 206, is not to the contrary. In that case the plaintiff, who had settled various damage claims against him for accidents caused by his intoxication, brought an action for contribution from the tavern where he had consumed the alcohol. This court rejected the plaintiff's argument that the tavern's potential liability to the injured parties under the Dramshop Act (Ill. Rev. Stat. 1983, ch. 43, par. 135) made it liable in tort for purposes of the Contribution Act. As an alternative ground for the decision, *Hopkins* also said that the "innocent suitor" requirement of the Dramshop Act operated to bar the plaintiff's contribution action. Because the plaintiff himself could not bring a dramshop action against the tavern, the court in *Hopkins* believed that to permit the contribution action would simply afford the plaintiff

a means of circumventing the statutory restriction. There is no similar statutory concern at work in this case.

We conclude that negligence, rather than the concepts of misuse or assumption of the risk, was the appropriate basis for Case's third-party action for contribution from McCartin. This does not mean that a new trial is required, however. A general verdict form encompassing all three theories was used without objection, and the verdict may have rested on the negligence theory, which we uphold here. (See *Witherell v. Weimer* (1987), 118 Ill. 2d 321, 329; *Moore v. Jewel Tea Co.* (1970), 46 Ill. 2d 288, 294.) But because the appellate court did not consider several of McCartin's allegations of trial error, the cause must be remanded to the appellate court for consideration of those remaining issues.

### III

In cause No. 62660, Case's appeal in its third-party action against McCartin, we reverse the judgment of the appellate court and remand the cause to that court for further proceedings.

In cause No. 62803, Dukes' appeal in his product liability action against Case, we affirm the judgment of the appellate court. Dukes has moved to strike all or part of the brief that was submitted by the Illinois Association of Defense Trial Counsel as *amicus curiae*. Because the matters raised in the brief are not at issue here, the motion is granted.

*62660 — Judgment reversed;*
*cause remanded.*
*62803 — Judgment affirmed.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.