JEANNE HLADISH, a Minor, by Ruth Ann Hladish, her Mother and Next Friend, *et al.*, Plaintiffs-Appellees, v. AUGUST WHITMAN, Defendant-Appellant.

Second District   No. 2—89—0368

Opinion filed December 20, 1989.

William P. Anderson, of Fuqua, Winter, Stiles & Anderson, Ltd., of Waukegan (Bryan R. Winter, of counsel), for appellant.

Snyder, Clarke, Dalziel & Johnson, of Waukegan (Julian Johnson, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Jeanne Hladish (Jeanne), a minor, and her parents, Ruth Ann Hladish and Edward M. Hladish (parents), filed a three-count complaint in the circuit court of McHenry County against defendant, August Whitman, seeking damages for injuries to Jeanne based on negligence, wilful and wanton conduct, and recovery for medical expenses incurred by her parents for the care and treatment of Jeanne. The trial court directed a verdict at the close of all the evidence in favor of all plaintiffs on the liability issue, and the jury returned a verdict for Jeanne in the amount of $100,000 and a verdict for her parents of $53,500 for medical expenses. The parents sought, in a post-trial motion, a judgment *n.o.v.* for the total amount of the medical bills submitted of $167,266.88 and, alternatively, sought an *additur* to increase the damages to $167,266.88, or a new trial on damages only. The trial court granted their request for an *additur* increasing the damages verdict to $167,266.88.

Defendant appeals from the judgment entered on both verdicts and raises the following issues: (1) whether the trial court erred in using *additur* to increase the damage award to the parents; (2) whether the trial court erred in refusing to instruct the jury on the definition of proximate cause; and (3) whether the trial court erred in directing

a verdict on liability in favor of all the plaintiffs.

The facts relevant to the disposition of this appeal may be briefly summarized. On November 7, 1982, at approximately 5:30 p.m., plaintiffs were occupants in an automobile traveling west on Elm Street in McHenry, Illinois. While plaintiffs' vehicle was stopped for a red light, a vehicle driven by defendant rear-ended plaintiffs' vehicle. The collision caused Jeanne Hladish, who was seated behind the driver, to strike the left side of her head on the window frame and the coat hanger device. She was 15 years old at the time of the accident.

Just prior to colliding with plaintiffs' vehicle, defendant collided with the rear end of another vehicle, but left the scene of that accident. According to Officer Mark Raz of the McHenry police department, defendant needed help in exiting his vehicle and had difficulty walking. There was a strong odor of alcohol emanating from defendant's vehicle, and Officer Raz believed defendant had been drinking. Defendant also defecated while in the squad car. At the police station, defendant admitted drinking beer, although he could not recall how much. According to Raz, defendant's balance was very shaky, his speech was slurred and garbled, and his eyes were very bloodshot. Defendant was arrested for driving under the influence of alcohol and subsequently pleaded guilty to that charge. Defendant admitted at trial to drinking eight glasses of beer between 2:50 p.m. and about 5:30 p.m. on the date of the accident. He further testified that he was not feeling well that day, that he did not recall seeing the Hladish vehicle before the collision or remember rear-ending the vehicle, and that he fell asleep or "something."

Jeanne testified that, following the accident, she and her family continued to their destination, but that she felt excruciating pain in her head, was nauseous, and applied an ice pack to her head. The following day she was seen by her pediatrician, who examined her and referred her to a neurologist. During the following year, Jeanne experienced severe headaches and missed 60 full days and 30 half days of school. According to Jeanne, during the time between the accident and May 1983 she experienced an average of 10 pain-free hours per week. She testified that she thought of taking her life because she thought she was not going to get better, that no one knew what to do with her, and that she was becoming a burden on her parents. She attempted suicide twice between the date of. the accident and July 1984.

In December 1984, Jeanne began seeing Dr. Jan Fawcett, a psychiatrist, who prescribed medication for her migraine headaches. This was not effective, however, and she attempted suicide again in Jan-

uary 1985. She was subsequently hospitalized until July 1985. Following her hospitalization, she continued seeing Dr. Fawcett and began attending a special school which could accommodate her needs. She graduated from the school and was attending De Paul University at the time of trial. She was then 21 years old.

Dr. Fawcett concluded, after his initial consultation with Jeanne, that she had a significant depression which was exacerbated by her uncontrolled headaches and their effect on her life. He further concluded that there was a significant suicide risk because of her view of her future and because of the interference with her life. According to Dr. Fawcett, Jeanne had a history subsequent to the accident of unpredictable behavior which included deep depression one moment and not so bad the next and that such a condition is not uncommon in adolescence. He also believed that control of her headaches was essential to the future prevention of her depressions. It was clear to Dr. Fawcett that her headaches were one of the major causes, or at least aggravating causes, of her depression. In Dr. Fawcett's opinion, Jeanne's headaches were a result of the accident; they markedly interfered with her life and were the major precipitating factor in her depression. He further opined that it was necessary that she be hospitalized between January and July 1985 and that she be placed in a special school following her hospitalization. In Dr. Fawcett's opinion, she is at risk for recurrence of both headaches and depression for the rest of her life.

During cross-examination, Dr. Fawcett admitted that younger females generally have a much higher rate of depression. He further stated that depression may also result from a combination of biological vulnerabilities and stress, but that the actual causes of depression are not really known.

Dr. Kenneth Moore, a board-certified psychiatrist and neurologist, also testified by way of an evidence deposition. Dr. Moore treated Jeanne for her headaches. According to Dr. Moore, her headaches resulted in severe pain, sometimes lasting for days, and also consisted of knife-like or ice–pick-like pains that were brief in duration. Tests administered by Dr. Moore indicated that she was accurately reporting her pain. Dr. Moore opined that Jeanne's headaches were caused by the automobile accident. Defendant offered no expert witnesses or any evidence regarding Jeanne's headaches or depression. Plaintiffs submitted an itemized list of some 30 medical bills incurred on behalf of Jeanne which included various doctor's bills, hospital bills, and bills for drugs and radiological services.

At the close of all the evidence, the trial court granted plaintiffs'

motion for directed verdict as to liability only. The court denied defendant's tendered instruction defining proximate cause. The jury returned a verdict in the amount of $53,500 for the medical expenses incurred by the parents. Plaintiffs' post-trial motion requested, *inter alia*, an *additur* to the parents' award to increase the amount of the award to $167,266.88, the total medical expenses incurred for the care and treatment of Jeanne. The trial court granted the *additur* of $113,766.88, thus entering judgment for the parents in the amount of $167,266.88 (the original jury award of $53,500 plus the *additur* of $113,766.88). Defendant did not file a post-trial motion.

We first address defendant's contention that the trial court erred in utilizing *additur* to increase the jury award to $167,266.88, an amount equalling the medical bills submitted by plaintiffs. Defendant contends that the jury verdict of $53,500 was appropriate because there was evidence that Jeanne's depression was not caused by her headaches resulting from the accident, but were caused by a combination of "genetic vulnerability and the stresses of being a teenager in today's competitive society." Defendant further argues that the damages were unliquidated and not susceptible to easy calculation as required to utilize *additur* and that *additur* was inappropriate here where no new trial was offered to him on the issue of damages to the parents.

■■ As an alternative to granting a plaintiff a new trial, *additur* has traditionally been limited in Illinois to rectifying the omission of a liquidated or easily calculated item of damages. (*Fraher v. Inocencio* (1984), 121 Ill. App. 3d 12, 16, 459 N.E.2d 11; *Ross v. Cortes* (1981), 95 Ill. App. 3d 772, 777, 420 N.E.2d 846.) *Additur* is unavailable where unliquidated tort damages are at issue. (*Bernesak v. Catholic Bishop* (1980), 87 Ill. App. 3d 681, 692, 409 N.E.2d 287; *Hong v. Williams* (1955), 6 Ill. App. 2d 456, 460, 128 N.E.2d 655.) Additionally, *additur* is improper if a defendant does not consent to it as an alternative to a new trial. (See *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 458, 516 N.E.2d 260.) *Additur* is a practice which should be sparingly indulged and should never be adopted except in clear cases. *J.I. Case Co.*, 118 Ill. 2d at 457, 516 N.E.2d at 265, quoting *Carr v. Miner* (1866), 42 Ill. 179, 192.

■■ Here, the issue of damages was the only question presented to the jury, and, although the parents submitted medical bills in the amount of $167,266.88, the issue of what bills were attributable to injuries that were the proximate result of defendant's conduct was in issue. Damages were neither liquidated nor easily calculable. This is

not a case of evident miscalculation or mistake on the part of the jury as to the damage award, but rather, is a determination by the jury as to what medical bills incurred were proximately caused by defendant. As that issue was in dispute here, this case was inappropriate for application of an *additur*.

Furthermore, *additur* is inapplicable here because defendant did not consent to it. Rather, defendant filed a response to plaintiffs' post-trial motion in which he objected to an *additur*. Absent defendant's consent to the *additur*, he was effectively denied a trial on the issue of damages. Accordingly, for these reasons we must reverse the trial court's order increasing plaintiffs' award from $53,500 to $167,266.88 by way of *additur*.

■ Defendant also has sought on appeal a new trial on the issue of damages as to both judgments in favor of all the plaintiffs based upon the contention that the trial court erred in refusing to give defendant's tendered jury instruction defining proximate cause. Plaintiffs have responded that this issue is waived because defendant did not file a post-trial motion raising this question for the trial court's consideration. We agree with plaintiffs. Defendant's failure to file a post-trial motion following the jury trial amounted to a failure to preserve the instructional issue for review. 107 Ill. 2d R. 366(b)(2)(iii); *Malott v. Hart* (1988), 167 Ill. App. 3d 209, 211, 521 N.E.2d 137; see *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 348-49, 415 N.E.2d 337.

Defendant further raises the contention that the trial court erred in directing a verdict in favor of the plaintiffs on the issue of liability. Essentially, defendant argues that there is evidence from which the jury could conclude that he passed out prior to the accident either due to the effects of the previous accident or because of the illness from which he was suffering.

■ Plaintiffs initially reply that the issue is waived because defendant did not file a post-trial motion raising the granting of the motion for directed verdict on the issue of liability. We disagree. The general rule is that a post-trial motion need not be filed to raise the issue on appeal of the granting of a directed verdict. (*Keen v. Davis* (1967), 38 Ill. 2d 280, 281-82, 230 N.E.2d 859; *Dyback v. Weber* (1985), 134 Ill. App. 3d 426, 446, 480 N.E.2d 845, *aff'd in part & rev'd in part* (1986), 114 Ill. 2d 232, 500 N.E.2d 8.) Although only the liability issue was removed from the jury by the granting of the motion for directed verdict in the instant case, we conclude that the same rule is logically applicable whether the entire cause of action or the liability issue alone is taken from the jury.

■■ ■ Upon reviewing the merits of defendant's argument, however, we find it baseless. The well-established rule to apply in addressing a motion for a directed verdict is that verdicts ought to be directed only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Here, the evidence established that defendant was intoxicated, that he drove his vehicle into the rear end of plaintiffs' vehicle, which was stopped at a stop light, and that, just prior to this accident, defendant had collided with the rear end of another vehicle and had driven off from the scene of that accident. The evidence that defendant was not feeling well and could not remember rear-ending plaintiffs' vehicle does not, under the circumstances of this accident, diminish the overwhelming evidence of defendant's liability.

■■ Defendant asks that upon reversal of the *additur*, as we decided earlier in this opinion, we reinstate the original jury verdict of $53,500. We agree that this results from the reversal of the *additur*. However, the parents' post-trial motion requested, alternatively, judgment *n.o.v.*, *additur*, or a new trial on damages only. The trial court made no ruling on the requests for judgment *n.o.v.* or for a new trial on damages. Moreover, the parties addressed only the *additur* issue in their appellate briefs. We therefore reverse the judgment of *additur*, reinstate the $53,500 judgment, and remand with directions to the trial court to consider the remaining contentions of the parents in their post-trial motion relating to judgment *n.o.v.* and a new trial on damages.

The judgment of the circuit court is reversed, and this cause is remanded with directions.

Reversed and remanded with directions.

UNVERZAGT, P.J., and INGLIS, J., concur.