*In re* PARENTAGE OF ERIC KIMBLE (Ruby Kimble, Petitioner-Appellant, v. Alfred T. Bean, Respondent-Appellee).

Second District   No. 2—89—0727

Opinion filed October 26, 1990.

Fred L. Foreman, State's Attorney, of Waukegan (Miriam C. Goldsmith, Assistant State's Attorney, of counsel), for appellant.

Ronald M. Gilford and Michael W. Rathsack, both of Chicago, for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Petitioner, Ruby Kimble, filed a petition in the circuit court of Lake County seeking a determination that respondent, Alfred Bean, was the father of her son, Eric Kimble. Following a jury trial, the jury found that respondent was not the natural father of Eric Kimble. The only issue raised by petitioner on appeal is whether the trial court committed reversible error in restricting petitioner's ability, on redirect examination, to question her blood-test expert on matters raised for the first time during respondent's cross-examination of the witness.

At trial, petitioner testified that she met respondent in 1979 when she had an appointment for dental treatment. She then began seeing respondent off and on socially. She saw him around the middle of October 1984 and engaged in sexual intercourse with him at that meeting. She testified that she did not have sexual intercourse with any other man during the months of September, October, November and December 1984. Petitioner's son, Eric, was born June 25, 1985, one month premature. Petitioner stated on cross-examination that Larry Sims had periodically been her boyfriend from 1980 to 1985 and that she went with him the early part of 1984. She testified that she had sexual relations with him in 1984. Larry Sims testified that he did not see petitioner or engage in sexual intercourse with her at all in 1984.

Respondent testified that he is a dentist and saw petitioner as a patient in 1979 and 1980. He stated that he never saw her socially

and never engaged in sexual intercourse with her.

It was stipulated that petitioner, respondent and the minor child, Eric, had blood samples taken pursuant to court order on May 20, 1987, for the purpose of genetic blood testing and analysis by the Genetic Institute. Beverly A. Pohl, who was employed as a part-time consultant for Genetic Testing Institute, was qualified as an expert on genetic paternity testing. She did not participate in the actual testing of the blood samples in this case, but testified regarding the results of that testing. She provided some detailed background information regarding the testing procedures used. Basically, she stated that the testing involves testing systems to look for factors present in the child that are absent in the alleged father being tested. A standard formula is used by all laboratories to calculate the likelihood of paternity based on the test results.

Pohl stated that she reviewed the documents relating to the blood tests performed in this case and, based on this review, she determined that respondent was not excluded as the father of Eric Kimble. She also testified that, assuming several facts, including the facts that petitioner and respondent did have intercourse and that respondent was not sterile, the likelihood that respondent was Eric's father was 98.46%.

On cross-examination, Pohl stated that one of the systems tested contained a characteristic common in the blood of the black population. Petitioner, respondent and Eric are all black. She also testified that seven systems were tested and that the tests done in this case would exclude 97% of falsely accused men. On redirect examination, petitioner attempted to ask questions regarding the typical number of tests that a laboratory would normally perform. The court sustained objections to these questions stating that general, foundational questions were no longer appropriate. Petitioner was allowed to ask Pohl if she knew in this particular case why the laboratory conducted the number of tests it conducted. Pohl answered, "[y]es." Petitioner then asked, "[w]hy was that?" An objection was sustained based on the form of the question. Petitioner made no attempt to rephrase the question and asked no further questions.

Respondent initially argues that petitioner's failure to file a post-trial motion precludes this court from considering the issue raised on appeal. We agree. Petitioner's failure to file a post-trial motion following the jury trial amounted to failure to preserve any matters for review. (107 Ill. 2d R. 366 (b)(2)(iii); *Hladish v. Whitman* (1989), 192 Ill. App. 3d 561, 566; *Malott v. Hart* (1988), 167 Ill. App. 3d 209, 211.) Before we can be asked to assess the correctness of the

original rulings of the trial court, the trial judge, who is most familiar with the events of the trial, must be given an opportunity to reassess his rulings. (See *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 349-50; *Leslie H. Allott Plumbing & Heating, Inc. v. Owens-Corning Fiberglas* (1983), 112 Ill. App. 3d 136, 137.) We are therefore unable to decide the issue raised on appeal and must affirm the judgment of the trial court. See *American National Bank & Trust Co. v. J & G Restaurant, Inc.* (1981), 94 Ill. App. 3d 318, 319-20.

■ It should be noted that, even if the issue raised was preserved for review, there is no basis for petitioner's claim of error. Petitioner contends that the court erred in preventing petitioner from questioning Pohl as to the number of systems tested and the rationale for testing more than one system where respondent had been allowed on cross-examination to elicit information concerning one of the systems tested. She argues that she was thus unjustly deprived of her right to clarify the issue and to explain how that common marker should be viewed in the total context of the blood test.

In fact, however, this testimony was allowed. Pohl did testify as to the number of systems tested. She also testified that the tests conducted would exclude 97% of falsely accused men. In addition, petitioner was allowed to ask Pohl if she knew why the number of tests conducted were conducted, to which she answered, "Yes." When an objection was sustained to petitioner's next question, "Why was that?" based on the form of the question, petitioner simply stated that she had no further questions. There is no indication from the record that additional questions regarding the rationale for testing more than one system would not have been allowed.

While it is true that objections were sustained to petitioner's questions regarding the number of systems typically tested, petitioner has not complained on appeal that this was error. Further, there was no error in this ruling. It is within the trial court's discretion to limit redirect examination to matters which were raised on cross-examination, and to exclude matters which could have been raised on direct examination. See *Myers v. Arnold* (1980), 83 Ill. App. 3d 1, 8.

Based on the record, the error complained of by petitioner on appeal simply did not occur.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER and REINHARD, JJ., concur.