(No. 69139.—

MANJU M. CHAND, Special Adm'r for the Estate of Parvez Chand, Appellee, v. RONALD H. SCHLIMME *et al.*, Appellants.

*Opinion filed September 26, 1990.—Modified on denial of rehearing November 30, 1990.*

Tressler, Soderstrom, Maloney & Priess, of Wheaton (Robert S. Soderstrom, Francis A. Spina and David W. Groundwater, of counsel), for appellants.

Kujawski, Rosen & Faerber, P.C., of Belleville (Fritz G. Faerber, of counsel), for appellee.

JUSTICE RYAN delivered the opinion of the court:

We allowed defendants' petition for leave to appeal from the ruling of the appellate court which, in an unpublished Rule 23 order (107 Ill. 2d R. 23), reversed the trial court and vacated its order granting defendants' motion for judgment notwithstanding the verdict. (184 Ill. App. 3d 1112 (unpublished order under Supreme Court Rule 23).) The jury, following trial of plaintiff's wrongful death action brought in the circuit court of St. Clair County, awarded plaintiff $322,000 in damages. Because we conclude that the appellate court did not have jurisdiction to disturb the circuit court's order, we must reverse the appellate court, which has the effect of reinstating the lower court's original post-judgment order.

This lawsuit arose out of a fatal accident that occurred on June 15, 1984. On that day, Parvez Chand,

plaintiff's decedent, was travelling alone in an automobile, heading eastbound on Illinois Route 13 in St. Clair County. Defendant Schlimme was proceeding westbound along the same highway in a 60-foot-long, 70,000-pound tractor/trailer. Stewart Koesterer was travelling behind Schlimme in a similar vehicle at the time of the accident. Schlimme and Koesterer were the only eyewitnesses to the accident apart from the decedent, who died shortly after the collision.

Schlimme testified that, while travelling 40 miles per hour in the westbound lane, he noticed Chand's car in the eastbound lane, about 1,500 feet away, begin to unexplainably drift into the westbound lane. Schlimme stated that, perceiving a potential problem, he began to slow down, by taking his foot off of the accelerator, and started to move his truck to the right, eventually entering the shoulder of the westbound lane. Schlimme estimated that at the time he entered the shoulder, Chand's car was 300 feet away. Chand's car and Schlimme's truck continued to converge toward a point on the shoulder of the westbound lane until they ultimately collided there.

Schlimme further testified that, at the time the vehicles were 300 feet apart, he was travelling 40 miles per hour, but he could not estimate the speed of the car. Schlimme estimated that he could have stopped his truck within 200 feet, although he was not sure about this. He also stated that there were no other vehicles in the oncoming eastbound lane, but he did not attempt to move his truck into that lane to avoid the collision. Finally, Schlimme testified that he did not flash his lights or sound his horn, and he did not apply his brakes until immediately before impact.

Koesterer testified that he was travelling in the same direction as Schlimme. Koesterer stated that his rate of speed was between 50 and 60 miles per hour,

and he was between 120 and 160 feet behind Schlimme. Koesterer stated that he thought Chand's car was in the westbound lane for between 5 and 10 seconds before impact, that he saw Schlimme's truck move toward the shoulder before impact and, at the time of the collision, Schlimme's truck was almost entirely on the shoulder of the westbound lane, beside which is a ditch and embankment that could have caused the truck to turn over if it would have entered it.

Koesterer further testified that Schlimme did not attempt to maneuver his truck into the eastbound lane, and he did not see Schlimme's brake lights go on, or hear Schlimme's horn sound, and Koesterer did not sound his own. Koesterer stated that Schlimme could have turned his truck into the eastbound lane, but he also stated that such a maneuver would be unusual, and that Koesterer would not have himself done so in that situation. He also stated that sudden turns create a risk that a truck will turn over or jackknife.

Michael Kovak testified that he followed Koesterer in the westbound lane. Kovak did not see the collision, but he encountered the scene shortly thereafter. Kovak testified that as he approached the accident scene, he saw Chand's car coming toward him, travelling backward, and that he saw Koesterer's truck turn into the eastbound lane to avoid hitting Chand, who lay in the road after having been ejected from his vehicle as a result of the collision.

Several other witnesses testified as to the condition of the accident scene. Particularly, Illinois State Trooper James Hall testified that road and weather conditions at the time of the accident were good. He further stated that the "point of maximum engagement," determined from marks on the roadway, was not entirely, but was substantially, on the right-hand shoulder. Trooper Hall

also estimated that Schlimme's truck could have stopped within between 88 and 126 feet.

After hearing this and other evidence, the jury returned a verdict in favor of plaintiff in the amount of $1.61 million. The jury, however, reduced this amount by 80%, representing its determination of plaintiff's decedent's comparative negligence. The trial court then entered judgment on the jury's verdict in the amount of $322,000 on November 2, 1987.

On February 10, 1988, having been granted an extension of time, defendants filed a timely post-trial motion in which they asked the circuit court to set aside the jury's verdict, vacate the previously entered judgment and enter judgment in favor of defendants notwithstanding the jury's verdict. In an eight-page order, entered March 18, 1988, the circuit court granted defendants' motion for judgment notwithstanding the verdict. The court concluded that defendant was not negligent and, even if there was a breach of duty, that breach of duty could not have been a proximate cause of Chand's death.

Plaintiff then filed what is labelled a "Motion to Reconsider" on April 4, 1988. On April 15, 1988, plaintiff filed both a "Notice of Appeal" and "Plaintiff's Post-Trial Motion." The circuit court denied plaintiff's April 15, 1988, post-trial motion on May 5, 1988. Plaintiff tried soon thereafter to amend her "Notice of Appeal" in the appellate court to include the circuit court's denial of plaintiff's post-trial motion. The appellate court entered an order on June 7, 1988, denying plaintiff's motion to amend her notice of appeal, stating that "the filing of the notice of appeal from a final judgment completely divests the trial court of jurisdiction." Plaintiff never filed a notice of appeal with the circuit court after the notice of appeal that had been filed on April 15, 1988.

Defendants filed a motion to dismiss plaintiff's appeal, alleging that it was filed prematurely. The appellate court denied this motion in a *per curiam* order filed August 2, 1988. Defendants also raised this issue during briefing in the appellate court, but that court did not address the issue of jurisdiction in its Rule 23 order, entered July 20, 1989, in which it reversed the circuit court and reinstated the jury's verdict. Defendants again raise the jurisdictional issue in this court. Having reviewed the record in this case, we conclude that appellate jurisdiction is in fact wanting.

Following the circuit court's order granting defendants' motion for judgment notwithstanding the verdict, plaintiff was left with the guidance of the Code of Civil Procedure and supreme court rules to chart her desired course of action in challenging that judgment. Section 2—1202(c) of the Code of Civil Procedure states as follows:

> "Post-trial motions must be filed within 30 days after the entry of judgment or discharge of the jury, if no verdict is reached, or within any further time the court may allow within the 30 days or any extensions thereof. *A party against whom judgment is entered pursuant to post-trial motion shall have like time after the entry of the judgment within which to file a post-trial motion.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 2—1202(c).)

In the present case, defendants filed a timely post-trial motion, that being their motion for judgment notwithstanding the verdict. The circuit court entered judgment on that post-trial motion in favor of defendants. Under section 2—1202(c), plaintiff was then permitted to, and did, on April 15, 1987, file such a post-trial motion. Plaintiff's post-trial motion attacking the circuit court's order granting judgment notwithstanding the verdict

was, therefore, timely, and the circuit court properly exercised the jurisdiction it retained over the matter.

The supreme court rules govern the timeliness of plaintiff's appeal. Rule 303 states, in pertinent part, as follows:

> "(a) Time; Filing; Transmission of Copy.
>
> (1) Except as provided in paragraph (b) below, the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, *or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-trial motion.*
>
> (2) When a timely post-trial motion has been filed by any party, whether in a jury case or a nonjury case, *a notice of appeal filed before the entry of the order disposing of the last pending post-trial motion shall have no effect* and shall be withdrawn by the party who filed it, by moving for dismissal pursuant to Rule 309. This is so whether the timely post-trial motion was filed before or after the date on which the notice of appeal was filed. *A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the post-trial motion,* as provided in subparagraph (a)(1) of this rule." (Emphasis added.) (107 Ill. 2d R. 303(a).)

Applying the facts in this case to Rule 303 and section 2—1202(c), we conclude that the notice of appeal filed by plaintiff on April 15, 1988, was premature and had "no effect." Plaintiff failed to file a new notice of appeal following the denial of her post-trial motion, as required by Rule 303(a). As a result, the appellate court lacked jurisdiction to disturb the circuit court's ruling.

The procedural rules provided plaintiff with an opportunity to attack the circuit court's order granting defendants' motion for judgment notwithstanding the

verdict, and she did so. While it was not essential that plaintiff file such a post-trial motion to preserve her appeal, the Code of Civil Procedure and supreme court rules gave her that right and she exercised it. The rules also gave plaintiff the right to file a notice of appeal and to have her case heard by a reviewing court. A party wishing to bring an appeal must, however, wait until the trial court rules on any pending post-trial motions before bringing an appeal. As the rules clearly state, a notice of appeal that a party files before the circuit court has disposed of a timely post-trial motion has no effect. (*In re Marriage of Uphoff* (1983), 99 Ill. 2d 90, 95.) Plaintiff's April 15, 1988, notice of appeal, filed simultaneously with her post-trial motion, therefore, had no effect. Plaintiff was, therefore, required to file a new notice of appeal within 30 days of May 5, 1988, the date on which the circuit court denied plaintiff's post-trial motion. Plaintiff never did so and, as a result, there is no appellate jurisdiction.

Plaintiff, nevertheless, argues that this court should look past the clear language of the procedural rules and find that jurisdiction is not in fact lacking. Plaintiff first contends, as the appellate court found, that when she filed her notice of appeal, she waived her post-trial motion. We find that both plaintiff and the appellate court have erroneously relied upon the common holding that "[u]pon filing a notice of appeal, the trial court is divested of jurisdiction to enter any order involving a matter of substance, and the jurisdiction of the appellate court attaches instanter." *Arnold v. Leahy Home Building Co.* (1981), 95 Ill. App. 3d 501, 512. See also *City of Chicago v. Myers* (1967), 37 Ill. 2d 470; *Tru-Link Fence Co. v. Reuben H. Donnelley Corp.* (1982), 104 Ill. App. 3d 745; *Francone v. Weigel Broadcasting Co.* (1979), 79 Ill. App. 3d 991; *Scott v. Scott* (1979), 72

Ill. App. 3d 117; *Richey Manufacturing Co. v. Mercantile National Bank* (1976), 40 Ill. App. 3d 923.

The origin of this holding can be traced to *Corwin v. Rheims* (1945), 390 Ill. 205, 216, in which this court stated as follows:

> "If a party who has an appealable interest in a judgment or decree files a motion to vacate such judgment or decree, he may thereafter abandon the motion by withdrawing it or if he files a notice of appeal, such filing will constitute an abandonment of the motion."

While it remains true that a party can abandon a post-judgment motion, for instance by filing a motion to dismiss, Rule 303 makes it clear that filing of a notice of appeal no longer acts as an abandonment by operation of law. That is, under Rule 303 as it was amended in 1983, a notice of appeal that is filed during the pendency of a post-trial motion, and even a notice of appeal that is filed before the filing of a post-trial motion but which post-trial motion is in fact later timely filed, has no effect. A notice of appeal that has no effect, furthermore, cannot serve to abandon an otherwise effective post-trial motion or to deprive the trial court of jurisdiction.

To the extent that the above-cited cases reach a contrary conclusion, they have been superseded by Rule 303. The provision of Rule 303 which explicitly renders a premature notice of appeal ineffective was not adopted until 1983, several years after the appeals in those cases were pending. What is apparently the only case to apply the *Corwin* abandonment principle to a post-1983 appeal (*Mounce v. Tri-State Motor Transit Co.* (1986), 150 Ill. App. 3d 806), is factually distinguishable in that it involved an alleged abandonment of a post-trial motion by the filing of a cross-appeal rather than a notice of appeal, and there is no indication that the trial court actually exercised any jurisdiction over

the post-trial motion. Because of the factual uncertainties in the *Mounce* opinion, it is difficult at this time for this court to conclude that the opinion was wrongly decided. We state only that *Mounce* cannot support plaintiff's position in this case that the filing of her notice of appeal stripped all jurisdiction from the trial court and conferred it upon the appellate court.

Plaintiff also argues that the purpose of the 1983 amendments to Rule 303 was to make "a notice of appeal *** ineffective to limit the rights of other parties to file post-trial motions." (Ill. Ann. Stat., ch. 110A, par. 303, Historical & Practice Notes, at 93-94 (Smith-Hurd 1985).) Therefore, plaintiff argues, there is no reason not to allow plaintiff herself to foreclose her own right to file a post-trial motion. We find plaintiff's argument unpersuasive. While the driving force behind the amendments might have been to codify the rule set forth in *Elliott v. Willis* (1982), 92 Ill. 2d 530, 543, and its progeny, that "one party's filing of a notice of appeal under Rule 303(a) [citation] should not foreclose the right of another party to file a timely post-trial motion," the rule is not limited to that precise factual situation. The rule clearly states that "[w]hen a timely post-trial motion has been filed by *any party*" a notice of appeal is not effective until the trial court has disposed of that post-trial motion. (Emphasis added.) (107 Ill. 2d R. 303(a).) Plaintiff's post-trial motion was timely. Plaintiff's notice of appeal was not. Under Rule 303, it was premature and "not effective."

We also note that post-trial motions have "the salutary effect of promoting both the accuracy of decision making and the elimination of unnecessary appeals." (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 350.) As such, we are hesitant to preclude lower courts from addressing them and we will not do so by permitting a party that has asked a trial court to con-

sider a question to summarily remove from that court the power to resolve the question by filing a notice of appeal. We are not saying that a party may not abandon its post-trial motion, but to do so there must be a more affirmative indication of abandonment than the mere filing of a notice of appeal before the disposition of the post-trial motion.

Plaintiff further argues that the provision in Rule 303 that states "[n]o request for reconsideration of a ruling on a post-trial motion will toll the running of the time within which a notice of appeal must be filed" posed a risk that her post-trial motion would be deemed to be a motion to reconsider the court's order pursuant to defendants' motion for judgment notwithstanding the verdict. Plaintiff, however, is unable to cite any cases in which such an event actually happened, although plaintiff does cite several cases that discuss the general rule that appeals may not be unendingly delayed by a party's filing of redundant pleadings. *Barnes v. Southern Ry. Co.* (1987), 116 Ill. 2d 236; *Kemner v. Monsanto Co.* (1986), 112 Ill. 2d 223. See also *Dulin, Thienpont, Potthast & Snyder, Ltd. v. Packaging Personified, Inc.* (1980), 89 Ill. App. 3d 647; *Sottile v. Suvick* (1979), 79 Ill. App. 3d 631.

We find plaintiff's argument unpersuasive, especially in light of the fact that section 2—1202(c) of the Code of Civil Procedure specifically gives plaintiff the right to file the motion that plaintiff did, and the Code terms it a "post-trial motion." Additionally, this court has identified two types of motions that clearly qualify as post-trial motions rather than motions to reconsider, one of which is a motion that challenges a judgment. In this case it is the judgment notwithstanding the verdict. (*Andersen v. Resource Economics Corp.* (1990), 133 Ill. 2d 342.) Plaintiff's motion was plainly a post-trial motion. It was captioned "Plaintiff's Post-trial Motion"

and in its first paragraph it stated that the plaintiff was proceeding "pursuant to Code of Civil Procedure Section 2—1202(c)."

The final point with regard to the jurisdictional question is what effect plaintiff's attempt to amend the notice of appeal with the appellate court had. It had none. While Rule 303(c)(4) (107 Ill. 2d R. 303(c)(4)) permits a party to amend a notice of appeal in the appellate court, plaintiff failed to file an effective notice of appeal in the circuit court in this case and, therefore, there existed no notice of appeal to amend. As a result, we are forced to conclude that no appellate jurisdiction has vested in this case. We, therefore, vacate the judgment of the appellate court with the effect of reinstating the trial court's orders granting defendants' motion for judgment notwithstanding the verdict and denying plaintiff's post-trial motion.

The disposition of this case on a procedural issue does not do a terrible injustice. We note that it was plaintiff's decedent's car that was on the wrong side of the road and to avoid a collision, defendant had driven his vehicle almost completely off the highway on the right side.

For these reasons, this court vacates the judgment of the appellate court, which reinstates the order of the circuit court of St. Clair County that entered judgment notwithstanding the verdict.

*Appellate court judgment vacated;*
*circuit court judgment notwithstanding*
*verdict reinstated.*