# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Garcia v. Seneca Nursing Home*, 2011 IL App (1st) 103085

---

| | |
|---|---|
| Appellate Court Caption | PHILEMON GARCIA, Special Administrator of the Estate of Roberto A. Garcia, Plaintiff-Appellant, v. SENECA NURSING HOME, d/b/a Lee Manor, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-10-3085 |
| Filed | August 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a wrongful death action arising from the suicide of a nursing home resident where a verdict was returned for plaintiff but the jury, in response to a special interrogatory, found the suicide was not foreseeable, the answer was irreconcilable with the verdict and judgment was properly entered for defendant. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-004015; the Hon. John Grogan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Steven M. Levin, Patricia L. Gifford, and Jason E. Hammond, all of Levin & Perconti, and Stephen A. Gorman, both of Chicago, for appellant.

Omar J. Fayez, Hugh C. Griffin, and Krista D. Luzio, all of Hall, Pringle & Schoonveld, LLC, of Chicago, for appellee.

Panel

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Karnezis and Harris concurred in the judgment and opinion.

## OPINION

¶ 1    Roberto Garcia died after he ejected himself from a fifth-floor window while he was in the care of defendant Seneca Nursing Home for various physical and mental illnesses. Plaintiff Philemon Garcia, Roberto's son and the administrator of his estate, brought the instant wrongful death and survival action against defendant. Following a jury trial, the jury returned a general verdict in plaintiff's favor and awarded $1 million in damages. The jury, however, also answered in the negative a special interrogatory that dealt with the foreseeability of Roberto's death. The trial court entered judgment in favor of defendant based on the special interrogatory answer. Plaintiff appeals, arguing that the jury's answer to the special interrogatory was not irreconcilable with the general verdict or, alternatively, that the special interrogatory should never have been given. We affirm.

¶ 2                                I. BACKGROUND

¶ 3    This appeal follows an 8-day jury trial during which 18 witnesses testified, including 4 expert witnesses. However, the facts relevant to this appeal are straightforward and relatively uncontested.

¶ 4    Roberto suffered from paranoid schizophrenia. He also suffered from a number of other physical ailments, including blindness, dystonia (abnormal muscle tone), akathisia (a type of chronic restlessness), and tardive dyskinesia, which manifests as involuntary twitching and grimacing. Roberto's wife cared for him as long as she could, but in July 2003 she placed Roberto in the care of defendant, a nursing home licensed under the Illinois Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2010)).

¶ 5    Roberto was eventually placed in a room on the fifth floor of the facility, which is the secured floor for mentally ill patients. At the time of his death in 2004, the fifth floor housed 42 patients under the care of 6 staff members. The doors to the floor were secured and alarmed, and the elevators required a secure access device in order to operate them. The floor was also equipped with windows, but these only opened slightly over eight inches and were

covered with a screen.

¶ 6    While at defendant's facility, Roberto was largely confined to a wheelchair and had difficulty walking or even moving his wheelchair at times. Roberto also exhibited a significant amount of delusional behavior, including wandering away, hiding, taking off his clothes at inappropriate times, and hallucinations. Roberto apparently did not enjoy living at defendant's facility, and he expressed to at least two witnesses on multiple occasions that he wanted to "go home" or "get out of [the facility]." Although there was ample testimony about Roberto's mental infirmities, behaviors, and his various psychological evaluations, he was never found to be at risk of suicide, self-harm, or escape.

¶ 7    On at least two occasions, defendant's staff noticed Roberto exploring the window in his room. A chart notation on November 2, 2003, noted that Roberto "tried to climb the window," but the staff member who made the notation explained at trial that Roberto appeared to be merely feeling the window. The staff member did not notify her superiors or other staff and she did not ask Roberto what he was doing at the time, but she mentioned the behavior to Roberto's psychologist. The next day, November 3, 2003, the psychologist visited Roberto and noted that he was again "trying to climb the window" and appeared to have "his hip up on the window."

¶ 8    The psychologist notified Roberto's psychiatrist of this behavior, but no significant action was taken and no care plan was ever created. According to Roberto's psychologist and psychiatrist, they were unaware that the windows on the fifth floor could open at all. Had they been aware of this fact, they testified that they would have been much more proactive in creating a treatment plan for Roberto's behavior.

¶ 9    On April 21, 2004, a nurse noticed that the window in Roberto's room was open and the screen was pushed out. After a brief search, Roberto was discovered lying on the ground, five stories below the window. At the time the paramedics arrived Roberto was still responsive, but he died of his injuries on the way to the hospital. Roberto's death was later ruled a suicide by the Cook County medical examiner.

¶ 10    Roberto's administrator filed the instant action against defendant and several of its staff members, including Roberto's psychiatrist. Among other causes of action not relevant to this appeal, the complaint alleged negligence against defendant for Roberto's death. At the jury instruction conference, defendant asked the court to submit a special interrogatory to the jury regarding the foreseeability of Roberto's actions. The interrogatory read as follows:

"Prior to Roberto Garcia's death, was it reasonably foreseeable to [defendant] that he would commit suicide or act in a self-destructive manner on or before April 21, 2004?"

Defendant drew the wording of the interrogatory verbatim from the case of *Hooper v. County of Cook*, 366 Ill. App. 3d 1 (2006). Plaintiff objected to the interrogatory, but following argument the trial court agreed to submit the interrogatory to the jury.

¶ 11    The jury returned a general verdict finding defendant liable in negligence and awarding $1 million for Roberto's pain and suffering prior to his death. However, the jury also answered the special interrogatory in the negative, meaning that the jury found that it was not foreseeable to defendant that Roberto would commit suicide or act in a self-destructive

manner. Defendant moved for entry of judgment in its favor based on the jury's answer to the special interrogatory. After extensive argument about the proper procedure to follow in this situation, the trial court decided to enter judgment on the general verdict in plaintiff's favor, but to enter and continue defendant's motion in order to consider it as part of defendant's posttrial motion.

¶ 12 Defendant timely filed a posttrial motion, arguing that the general verdict was irreconcilable with the special interrogatory answer and required judgment in defendant's favor. Defendant also moved for judgment notwithstanding the verdict or a new trial based on other grounds and alleged errors not relevant here. In opposition to defendant's motion, plaintiff maintained that although the trial court's decision to give the interrogatory was error, the jury's answer was not irreconcilable with the general verdict. Plaintiff urged the trial court to deny the motion and leave the general verdict intact. Notably, plaintiff did not move to vacate the answer to the special interrogatory and did not argue that the trial court's alleged error in submitting the interrogatory to the jury warranted a new trial.

¶ 13 Following full briefing and extensive oral arguments, the trial court held that the interrogatory answer could not be reconciled with the general verdict. Accordingly, the trial court vacated the judgment on the general verdict in plaintiff's favor and entered judgment in defendant's favor on the special interrogatory answer. Plaintiff did not file a posttrial motion following entry of judgment in defendant's favor. Instead, plaintiff filed timely notice of appeal. This case is now before us.

¶ 14                                             II. ANALYSIS

¶ 15 Plaintiff makes two intertwined arguments on appeal, namely, (1) that judgment in defendant's favor was improper because the jury's answer to the special interrogatory was not irreconcilable with the general verdict, or (2) in the alternative, that the trial court erred by giving the special interrogatory because it was not in proper form. Before we may reach the merits, however, we must first consider whether plaintiff has forfeited review of these issues because he did not file a posttrial motion after the trial court entered judgment for defendant.

¶ 16                                             A. Forfeiture

¶ 17 In a jury case, Illinois Supreme Court Rule 366(b)(2)(iii) (eff. Feb. 1, 1994) states that "[a] party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified in the motion." Ordinarily, an appealing party forfeits review of an issue unless the party both "object[ed] to an error at trial and includ[ed] it in a written posttrial motion." *Thornton v. Garcini*, 237 Ill. 2d 100, 106 (2009); see also *In re Parentage of Kimble*, 204 Ill. App. 3d 914, 916 (1990) ("Petitioner's failure to file a post-trial motion following the jury trial amounted to failure to preserve any matters for review."). This is in contrast to a nonjury civil trial, in which "[n]either the filing of nor the failure to file a post-judgment motion limits the scope of review." Ill. S. Ct. R. 366(b)(3)(ii) (eff. Feb. 1, 1994).

¶ 18 It is undisputed that plaintiff did not file a posttrial motion following the trial court's

decision to vacate judgment in plaintiff's favor and enter judgment in defendant's favor on the special interrogatory. This situation is somewhat unusual because plaintiff initially won judgment in his favor. Plaintiff argues that he is not required to file a posttrial motion in this situation because all of the issues that would have been raised in such a motion had already been raised in defendant's own posttrial motion, making any posttrial motion filed by plaintiff redundant. Moreover, plaintiff argues that a posttrial motion is unnecessary because the trial court effectively made this into a nonjury case because the judgment that it entered in defendant's favor was contrary to the general verdict.

¶ 19    Posttrial motions in jury cases are governed by section 2-1202 of the Code of Civil Procedure (735 ILCS 5/2-1202 (West 2010)). Under section 2-1202(b),

> [r]elief desired after trial in jury cases *** must be sought in a single post-trial motion. *** The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief." 735 ILCS 5/2-1202(b) (West 2010).

Section 2-1202(c) requires a posttrial motion to be filed within 30 days of entry of judgment or the failure of a jury to reach a verdict, including extensions granted by the court. See 735 ILCS 5/2-1202(c) (West 2010). In cases like this one where a posttrial motion is successful, section 2-1202(c) states that "[a] party against whom judgment is entered pursuant to a post-trial motion shall have like time [*i.e.*, 30 days] after the entry of the judgment within which to file a post-trial motion." 735 ILCS 5/2-1202(c) (West 2010). Finally, section 2-1202(e) warns that "[a]ny party who fails to seek a new trial in his or her post-trial motion *** waives the right to apply for a new trial, except in cases in which the jury has failed to reach a verdict." 735 ILCS 5/2-1202(e) (West 2010).

¶ 20    As applied to this case, section 2-1202 explicitly granted plaintiff 30 days in which to file his own posttrial motion after the trial court granted defendant's posttrial motion and entered judgment in defendant's favor. The question, however, is whether filing a posttrial motion is merely allowed or is mandatory before seeking review of an issue on appeal in this procedural situation.

¶ 21    In arguing that a posttrial motion is unnecessary to preserve issues for appeal, plaintiff relies on the line of cases following *Keen v. Davis*, 38 Ill. 2d 280 (1967). In *Keen*, the supreme court resolved a dispute among the districts of this court regarding whether it is necessary to file a posttrial motion following entry of a directed verdict in a jury case in order to preserve issues for appeal. See *id.* at 281. The supreme court held that a posttrial motion is unnecessary in that situation, quoting with approval the following reasoning from a Second District case on the subject:

> "When a judge directs a verdict at any stage of the trial, in effect, he has removed the case from the realm of the rules relating to jury cases and the rules applicable to bench trials should apply. It seems illogical to require a party to address the same arguments to the same judge on the identical questions before proceeding to review by an appellate tribunal." (Internal quotation marks omitted.) *Id.* at 281-82 (quoting *Larson v. Harris*, 77 Ill. App. 2d 430, 434 (1966)).

¶ 22 *Keen*'s holding has been settled law in Illinois for close to half a century, and *Keen* has been followed by a number of cases that plaintiff relies on in support of his position. See, *e.g.*, *Johnson v. Transportation International Pool, Inc.*, 345 Ill. App. 3d 471 (2003); *Takecare v. Loeser*, 113 Ill. App. 2d 149 (1969). The problem with the cases cited by plaintiff, however, is that they are inapposite to the procedural posture of this case. As defendant correctly points out in its surreply[1] brief, this situation is not analogous to a directed verdict. Unlike a directed verdict, the trial court did not take the case away from the jury and enter judgment on its own. In fact, quite the opposite happened. Although the trial court vacated the judgment that had been previously entered based on the general verdict, the trial court then entered judgment on the jury's answer to the special interrogatory, which is a scenario explicitly envisioned by section 2-1108 of the Code of Civil Procedure (735 ILCS 5/2-1108 (West 2010) ("When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly.")). Judgment in this case was entered on a finding by the jury, not on a directed verdict entered by the court without regard to findings by the jury. See Ill. S. Ct. R. 240 (eff. Jan. 1, 1967) ("The order of the court granting a motion for a directed verdict is effective without any assent of the jury.").

¶ 23 This fact is critical because it removes this case from the province of *Keen*. As the supreme court explained in *Robbins v. Professional Construction Co.*, 72 Ill. 2d 215, 224 (1978), "[a] directed verdict is a *complete removal* of an issue from the province of the jury." (Emphasis added.) *Robbins* dealt with an order of the trial court that set aside in part a general verdict and granted the plaintiff a new trial on the question of damages. See *id.* The supreme court found that *Keen* was inapposite in this situation, reasoning that "[w]here the jury already has reached a general verdict in favor of plaintiff, setting aside that verdict in favor of a new trial on the question of damages does not remove the question of liability from the province of the jury, because the first jury's verdict on that question remains intact." *Id.* *Keen* is consequently a "narrow exception" (*id.* at 225) to the general requirement of filing a posttrial motion in order to preserve issues in a jury case.[2]

¶ 24 The supreme court reiterated the limited applicability of *Keen* in *Mohn v. Posegate*, 184

---

[1]Defendant initially raised the forfeiture issue in its response brief, and plaintiff addressed defendant's arguments in its reply. Due to the uniqueness of this issue in this particular procedural context and in order to have the benefit of full briefing by the parties, we ordered defendant to file a surreply addressing the cases raised in plaintiff's reply.

[2]There is some authority indicating that an unrelated proposition in *Robbins* regarding the preclusive effect of the denial of a petition to file an interlocutory appeal may have been overruled *sub silentio* by *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 241 (1986). See *Rosolowski v. Clark Refining & Marketing*, 383 Ill. App. 3d 420, 428 n.5 (2008) (citing *Craigmiles v. Egan*, 248 Ill. App. 3d 911, 918 (1993)). The supreme court has never explicitly repudiated *Robbins*, however, and the case was cited with approval in *Mohn*, which was decided 12 years after *Kemner*. Even assuming that *Robbins* has been overruled in part, that particular point is not relevant to the question of how error is preserved.

Ill. 2d 540, 544-47 (1998), in which it held that filing a posttrial motion following summary judgment is unnecessary to preserve an issue for appeal. In comparing summary judgment to a directed verdict, the supreme court noted:

> "In the same way that the jury does not determine the verdict when it is directed, the jury makes no factual determination concerning the issue or issues disposed of by entry of summary judgment before trial of the case upon the remaining undetermined issues. Thus, we conclude that, as in a nonjury case in which a post-judgment motion need not be filed, a party need not raise in a post-trial motion any issue concerning the pretrial entry of summary judgment as to part of a cause of action in order to preserve the issue for review." *Id.* at 546-47.

As *Mohn* demonstrates, the difference between the situations exemplified by *Keen* and *Robbins*, and consequently whether a posttrial motion is required to preserve alleged error, is whether the jury has rendered a decision on the issues before it. Plaintiff's reliance on cases that follow *Keen* and its progeny in support of his argument that no posttrial motion is required is therefore misplaced because the jury made a factual determination in this case and the trial court entered judgment based on that determination.

¶ 25    Plaintiff raises two additional points that we must consider. First, plaintiff argues that requiring him to file a posttrial motion in this particular procedural situation is unnecessarily duplicative because the issue of the special interrogatory was extensively argued and briefed before the trial court in response to defendant's own posttrial motion. As the supreme court has explained, a posttrial motion serves three purposes:

> "First, it allows the decision maker who is most familiar with the events of the trial, the trial judge, to review his decisions without the pressure of an ongoing trial and to grant a new trial if, on reconsideration, he concludes that his earlier decision was incorrect. [Citations.] Second, by requiring the statement of the specific grounds urged as support for the claim of error, the rule allows a reviewing court to ascertain from the record whether the trial court has been afforded an adequate opportunity to reassess the allegedly erroneous rulings. Third, by requiring the litigants to state the specific grounds in support of their contentions, it prevents them from stating mere general objections and subsequently raising on appeal arguments which the trial judge was never given an opportunity to consider. [Citations.] The rule, which is not limited to questions concerning jury instructions, has the salutary effect of promoting both the accuracy of decision making and the elimination of unnecessary appeals." *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 349-50 (1980).

¶ 26    Although the trial court in this case did have the opportunity to thoroughly consider this issue, satisfying the second policy concern, plaintiff's argument overlooks the other two policy bases for the posttrial motion requirement. In particular, plaintiff's failure to file a posttrial motion in this case deprived the trial court of the opportunity to consider the specific relief requested by plaintiff on appeal. Of particular note is the fact that during argument on defendant's posttrial motion, although plaintiff asserted that the trial court's decision to give the special interrogatory was error, plaintiff did not ask the trial court for a new trial. In fact, plaintiff specifically argued that there should *not* be a new trial or, if one was ordered, that

it should be limited to the question of damages only. In contrast, on appeal plaintiff now urges us to order a new trial if we find that the trial court erred in giving the special interrogatory to the jury. This is precisely the situation sought to be avoided by the posttrial motion requirement.

¶ 27 Moreover, plaintiff has deprived the trial court of the opportunity to review its own decision. Even in situations where a posttrial motion is not required, the supreme court has expressed a strong preference for ensuring that this policy objective is met. See *Mohn*, 184 Ill. 2d at 547 ("We note that in this case, pursuant to plaintiff's petition for reconsideration, the trial court had an opportunity to reexamine its decision as to the entry of summary judgment in favor of [defendant] and partial summary judgment in favor of [codefendant]."). The mere fact that the trial court was adequately briefed on this subject does not render superfluous the other two policy considerations behind the posttrial motion requirement. On the contrary, the fact that only one of the three policy goals was met in this case indicates that accepting plaintiff's position would defeat the purpose of the posttrial motion requirement.

¶ 28 Second, plaintiff directs our attention to *Chand v. Schlimme*, 138 Ill. 2d 469 (1990). In that case, the plaintiff won a jury verdict, but the trial court granted the defendant's posttrial motion for judgment notwithstanding the verdict, vacated the judgment in the plaintiff's favor, and entered judgment in the defendant's favor. See *id.* at 474. The plaintiff then simultaneously filed both a notice of appeal and a posttrial motion, which was later denied by the trial court. See *id.* Although the plaintiff later attempted to amend her notice of appeal, she never filed a second notice of appeal after her posttrial motion was denied. See *id.* The issue on appeal to the supreme court was whether the appellate court ever obtained jurisdiction over the case. See *id.* at 476. The supreme court held that the appellate court lacked jurisdiction, reasoning that the plaintiff's first notice of appeal was ineffective because she filed it concurrently with her posttrial motion and that she failed to file a new notice of appeal after the trial court disposed of all pending posttrial motions. See *id.*

¶ 29 In support of his argument that a posttrial motion is unnecessary in this case, plaintiff points to a statement that the supreme court made in passing while discussing posttrial motions under section 2-1202(c), which authorized the plaintiff to file her own posttrial motion after the trial court entered judgment for the defendant notwithstanding the verdict in the plaintiff's favor. The supreme court noted, "The procedural rules provided plaintiff with an opportunity to attack the circuit court's order granting defendants' motion for judgment notwithstanding the verdict, and she did so. *While it was not essential that plaintiff file such a post-trial motion to preserve her appeal*, the Code of Civil Procedure and supreme court rules gave her that right and she exercised it." (Emphasis added.) *Chand*, 138 Ill. 2d at 476-77. Plaintiff argues that the italicized clause in this statement indicates that although he had the right to file a posttrial motion in this case, he was not required to do so in order to preserve issues for appeal.

¶ 30 *Chand* is inapplicable to this case for two reasons. First, the statement that plaintiff points to in *Chand* is *obiter dictum* and is therefore of uncertain precedential value. As the supreme court has explained, there are two types of *dicta* in judicial opinions:

"The term '*dictum*' is generally used as an abbreviation of *obiter dictum*, which

-8-

means a remark or opinion uttered by the way. Such an expression or opinion as a general rule is not binding as authority or precedent within the *stare decisis* rule. [Citations.] On the other hand, an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause, if *dictum*, is a judicial *dictum*. [Citations.] And further, a judicial *dictum* is entitled to much weight, and should be followed unless found to be erroneous. [Citations.] Even *obiter dictum* of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court. [Citation.]" *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993).

See also *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217 (2010). *Chand* dealt with the questions of jurisdiction and timely filing of notices of appeal, not the question of preserving error by filing a posttrial motion. The statement that plaintiff relies on was made in passing and does not appear to have been briefed by the parties in the case. Moreover, the statement is not accompanied by any citation to authority, so we are unable to determine the legal source and context of the statement. Consequently, it is unclear when read in the context of *Chand* whether the statement is binding precedent.

¶ 31 Even so, we need not take any position on whether the statement is *obiter* or judicial *dictum* or whether a posttrial motion is required to preserve error in a situation like *Chand* because that scenario is not before us. *Chand* is distinguishable from this case because its procedural posture is different. In *Chand*, the jury returned a general verdict in the plaintiff's favor, but the trial court vacated that verdict and entered judgment notwithstanding the verdict in the defendant's favor. Yet there was no special interrogatory in *Chand*, and unlike in *Chand* the trial court in this case did not enter judgment notwithstanding the verdict. Regardless of any precedential force that statement may have, it has no effect on this case because the trial court did not enter judgment notwithstanding the verdict. Indeed, because the trial court entered judgment in defendant's favor based on the special interrogatory answer, it explicitly did not reach defendant's alternative posttrial requests for judgment notwithstanding the verdict or a new trial.[3]

¶ 32 In light of the above discussion, we conclude that a posttrial motion is necessary in order to preserve error in this particular procedural situation. Unlike *Keen* and *Mohn*, the jury not only rendered a general verdict but also made a specific factual finding in response to the special interrogatory. Although the trial court vacated the judgment based on the general verdict, the trial court then entered judgment based on the jury's finding in the special interrogatory. Because judgment was entered in defendant's favor on the jury's finding, Illinois Supreme Court Rule 366 required plaintiff to file a posttrial motion in order to

---

[3]Section 2-1202(f) mandates that the trial court "rule upon all relief sought in all post-trial motions." 735 ILCS 5/2-1202(f) (West 2010). The purpose of this rule is to ensure that, in the event that a reviewing court reverses on or vacates one form of relief, the trial court's decisions on the other forms of relief are available for review. See 735 ILCS 5/2-1202(f) (West 2010). The trial court in this case found that defendant's alternative requests for relief were moot due to its ruling on the main issue of the special interrogatory. Neither party assigns this action as error, however, so we do not address it further given our disposition of this case.

-9-

preserve issues for review. Plaintiff failed to do so, and he has therefore forfeited review of any alleged errors. *Cf. F.E. Holmes & Son Construction Co. v. Gualdoni Electric Service, Inc.*, 105 Ill. App. 3d 1135, 1142-43 (1982) (in a case where the trial court entered judgment in the plaintiff's favor based on the jury's answer to a special interrogatory, finding that the defendant failed to preserve the issue for review because it "did not move to vacate the answer to the special interrogatory nor did it file a post-trial motion objecting to the answer").

¶ 33    Despite plaintiff's forfeiture, it is well settled that the forfeiture rule is "an admonition to the parties and does not impose a limitation on the reviewing court." *In re J.R.*, 342 Ill. App. 3d 310, 317 (2003). We may overlook forfeiture "in the interest of developing a sound body of law [citation], and may review any issue so long as the record contains facts sufficient for its resolution [citation]." *Id.* at 317-18. The trial court's decision in this case relied on our reasoning and holding in *Hooper v. County of Cook*, 366 Ill. App. 3d 1 (2006). In the interest of developing our precedent in order to provide guidance in similar cases, we choose to reach the merits of plaintiff's appeal.

¶ 34         B. Compatibility of the Special Interrogatory With the General Verdict

¶ 35    We first examine plaintiff's contention that the trial court erred by entering judgment in defendant's favor based on the jury's answer to the special interrogatory. Special interrogatories are governed by section 2-1108 of the Code of Civil Procedure (735 ILCS 5/2-1108 (2010)), which reads in full as follows:

> "Verdict–Special interrogatories. Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly."

We review *de novo* as a question of law a trial court's decision on whether to give a special interrogatory that has been requested by a party. See 735 ILCS 5/2-1108 (2010).

¶ 36    Special interrogatories are designed to be the "guardian of the integrity of a general verdict in a civil jury trial [citation]," and they "test[ ] the general verdict against the jury's determination as to one or more specific issues of ultimate fact." (Internal quotation marks omitted.) *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002). As section 2-1108 explains, an answer to a special interrogatory controls the judgment when it is "inconsistent" with the general verdict. The special interrogatory only controls, however, when it is "clearly and absolutely irreconcilable with the general verdict. [Citation.]" (Internal quotation marks omitted.) *Id.* at 555-56 As the supreme court has explained:

> "If a special interrogatory does not cover all the issues submitted to the jury and a 'reasonable hypothesis' exists that allows the special finding to be construed

-10-

consistently with the general verdict, they are not 'absolutely irreconcilable' and the special finding will not control. [Citation.] In determining whether answers to special interrogatories are inconsistent with a general verdict, all reasonable presumptions are exercised in favor of the general verdict. [Citation.]" *Id.* at 556.

¶ 37     The dispute in this case is whether the special interrogatory covered all of the issues related to foreseeability of Roberto's injury and subsequent death. Plaintiff argues that the interrogatory was unacceptably narrow and did not cover all possible explanations for Roberto's fall from the window. Specifically, plaintiff contends that Roberto accidentally ejected himself from the window because he was confused, blind, mentally ill, and often delusional. Plaintiff argues that sufficient evidence was adduced at trial in support of the theory that Roberto merely "eloped" from the nursing home, and he did not intend to either kill or harm himself in any way when he exited the window. Consequently, plaintiff argues, the jury's answer to the interrogatory could be consistent with the general verdict if the jury answered the interrogatory in the negative because it did not believe that Roberto intended to harm or kill himself, but also found that defendant should have reasonably foreseen that Roberto would attempt to leave the facility via the window.

¶ 38     In contrast, defendant argues that the interrogatory covers plaintiff's elopement theory. Defendant's position is that the term "self-destructive" has no mental state associated with it, meaning that it covers all instances of self-destructive behavior regardless of whether that behavior was intentional, negligent, or merely accidental. Under defendant's interpretation, the jury answered the interrogatory in the negative because it found that defendant could not reasonably foresee that Roberto would harm or kill himself, regardless of Roberto's subjective mental state or intentions when he ejected himself from the window.

¶ 39     The trial court in this case explicitly relied on our reasoning and holding in *Hooper v. County of Cook*, 366 Ill. App. 3d 1, 7-8 (2006), in which this court was confronted with a nearly identical situation to this case. In *Hooper*, the plaintiff was admitted to the defendant hospital for medical treatment unrelated to the case. See *id.* at 3-4. While in the intensive care unit (ICU), the plaintiff "became paranoid, combative and uncontrollable," which are symptoms consistent with "a form of delirium known as ICU psychosis." *Id.* at 4. The attending psychiatrist treated plaintiff with an antipsychotic and transferred her to another ward, but did not order one-to-one nursing care for the plaintiff or personally talk to or examine her. See *id.* Early the next morning, the plaintiff was found hanged in her bathroom. See *id.*

¶ 40     At trial, there was conflicting expert testimony regarding whether the plaintiff's death by hanging was foreseeable, and the experts were also unable to identify why the plaintiff hung herself. See *id.* During the jury instruction conference, the defendant asked the court to present the jury with a special interrogatory that is identical to the one used in the instant case. See *id.* at 5. However, the court refused to give the tendered interrogatory. See *id.* On appeal, we reversed and held that it was error for the trial court to refuse to give the interrogatory, finding that "[a] negative answer would have been irreconcilable with the general verdict against defendants." *Id.* at 8.

¶ 41     In this case, defendant tendered an interrogatory that was identical to the one in *Hooper*,

arguing to the trial court that it would be error for the trial court to refuse to give it because, in light of *Hooper*, a negative answer would be dispositive regarding defendant's liability in negligence for Roberto's death. Plaintiff attempts to distinguish *Hooper* by arguing that in *Hooper* "the only theory the special interrogatory in that case was intended to cover was the foreseeability that the decedent would commit suicide." In contrast, plaintiff argues, in this case the special interrogatory fails to cover the possibility that Roberto was merely attempting to elope from the facility through the window when he accidentally fell to his death.

¶ 42    The problem with plaintiff's position is that it fails to account for the fact that the special interrogatory in *Hooper*, as well as the special interrogatory in this case, explicitly asked the jury to determine whether it was reasonably foreseeable that the decedent would commit suicide *or* act in a self-destructive manner. See *id.* at 5. If plaintiff's position were correct, then the interrogatory would only have mentioned the foreseeability of the decedent's suicide. The fact that it also asked for the jury's views on whether a self-destructive act was foreseeable indicates that the foreseeability of suicide was not the only theory encompassed by the interrogatory. Indeed, offering the two alternative theories was necessary in *Hooper*, given that there was a factual dispute between experts regarding whether the decedent had even committed suicide. Whereas the plaintiff's expert opined that the decedent had accidentally killed herself while in a delirious state, the defendant's expert opined that the decedent had intentionally hung herself. Regardless of which opinion the jury ultimately accepted, the decedent's death was either a suicide or a self-destructive act, both of which are theories that are covered by the special interrogatory. See *id.* at 8, 10 (referring to the decedent's death alternately as "suicide" and "self-destructive behavior").

¶ 43    Like *Hooper*, in this case the parties presented evidence that suggested either that Roberto had committed suicide or that he may have accidentally fallen to his death while attempting to leave the facility through the window. The medical examiner ruled Roberto's death a suicide, which by the medical examiner's definition is necessarily an intentional act, although the medical examiner also conceded on cross-examination that an "undetermined" ruling on the manner of death might have been warranted if Roberto had not been thinking reasonably when he ejected himself from the window. There was also ample testimony that Roberto had expressed interest both in opening the window and in leaving the facility in order to return home, and it was also clear from the record that Roberto was not always rational. This is indistinguishable from the situation in *Hooper*. In both cases, there was evidence that the decedents killed themselves either intentionally or accidentally. Plaintiff's theory that Roberto accidentally fell to his death while delirious is no different in its material aspects from the plaintiff's theory in *Hooper* that the decedent accidentally hung herself while delirious. Just as in *Hooper* the possibility that the plaintiff's death was accidental was covered under the "self-destructive act" portion of the special interrogatory, so too in this case is the possibility that Roberto fell to his death accidentally while he deliriously attempted to leave the facility through the window in order to return home.

¶ 44    Plaintiff further argues that a self-destructive act necessarily requires the intent to harm oneself. Plaintiff's interpretation is inconsistent with our holding in *Hooper* and with the understanding of the phrase in our case law. As we have already noted, in *Hooper* there was

evidence that the decedent killed herself unintentionally, but this lack of intent did not render the interrogatory impermissibly ambiguous. Indeed, the interrogatory required that the jury answer in the negative both the suicide and the self-destruction prongs in that case in order to make the special interrogatory irreconcilable with the general verdict. See *id.* at 8.

¶ 45 Additionally, in *Hooper* we referred to *Winger v. Franciscan Medical Center*, 299 Ill. App. 3d 364, 374 (1998). Although *Winger* dealt with the duty that a physician owes a mentally ill patient rather than the foreseeability of an injury, it is nevertheless useful in construing the meaning of the term "self-destructive." *Winger* stated:

> "Where it is reasonably foreseeable that a patient by reason of his mental or emotional illness may attempt to injure himself, those in charge of his care owe a duty to safeguard him from his self-damaging potential. This duty contemplates the reasonably foreseeable occurrence of *self-inflicted injury regardless of whether it is the product of the patient's volitional or negligent act*." (Internal quotation marks omitted.) (Emphasis added.) *Winger*, 299 Ill. App. 3d at 374.

As *Winger* makes clear, whether patients intend to harm themselves is irrelevant in this particular context. Regardless of whether Roberto's death was in fact the result of either a volitional or a negligent act on his part, it is covered by one of the prongs of the special interrogatory.

¶ 46 In sum, we cannot reconcile the jury's answer to the special interrogatory with the general verdict in plaintiff's favor. Although we are bound to exercise "all reasonable presumptions *** in favor of the general verdict" (*Simmons*, 198 Ill. 2d at 556), plaintiff's interpretation is not reasonable. Both our case law and the record at trial demonstrate that plaintiff's theory that Roberto's death was an unintentional accident is covered by the self-destructive act prong of the special interrogatory. The jury found that it was not foreseeable that Roberto would kill or harm himself, and without foreseeability there can be no negligence. See *Hooper*, 366 Ill. App. 3d at 8. The general verdict was irreconcilable with the special interrogatory answer, and as a result the trial court properly vacated the judgment in plaintiff's favor and entered judgment for defendant based on that answer.

¶ 47 C. Form of the Special Interrogatory

¶ 48 Plaintiff also argues that he is entitled to a new trial because the trial court should never have given the interrogatory at all. Although plaintiff's argument on this point is in most respects the same as his argument on the issue of consistency with the general verdict, we address it separately because the analytical framework is different.

¶ 49 Section 2-1108 mandates requires the trial court to instruct the jury to answer a special interrogatory when a party requests it. See 735 ILCS 5/2-1108 (West 2010). However, the trial court's duty on this point only arises when the interrogatory is in the proper form. "[A] special interrogatory is in proper form if (1) it relates to an ultimate issue of fact upon which the rights of the parties depend, and (2) an answer responsive thereto is inconsistent with some general verdict that might be returned." *Simmons*, 198 Ill. 2d at 563. Additionally, the interrogatory "should be a single question, stated in terms that are simple, unambiguous, and understandable; it should not be repetitive, confusing, or misleading." *Simmons*, 198 Ill. 2d

at 563.

¶ 50     As we discussed in the previous section, the first two points have been satisfied because the interrogatory related to the foreseeability of Roberto's actions and a negative answer is dispositive on the question of defendant's liability in negligence. We will not repeat our analysis here. Moreover, we previously analyzed this same interrogatory in *Hooper* and explicitly found that it met those elements. See *Hooper*, 366 Ill. App. 3d at 7-8.

¶ 51     Plaintiff additionally argues that the interrogatory required the jury to make four separate findings of fact, that is, whether (1) Roberto committed suicide, and (2) if so, was it foreseeable, or (3) whether Roberto committed a self-destructive act, and (4) if so, was it foreseeable? We disagree. The interrogatory was phrased as a single question about the foreseeability of two alternatives in the disjunctive, and an affirmative answer to either alternative would require an affirmative answer to the entire question. Such a construction is legitimate and does not make the interrogatory impermissibly compound. *Cf. Morton v. City of Chicago*, 286 Ill. App. 3d 444, 450 (1997) (interrogatory with three alternatives in the disjunctive).

¶ 52     Finally, plaintiff argues that the interrogatory was confusing. In particular, plaintiff argues that the jury was not provided with a definition of either "suicide" or "act in a self-destructive manner." Plaintiff argues that this fact alone means that the jury must have misunderstood the meaning of the interrogatory and explains the discrepancy between the general verdict and interrogatory answer.

¶ 53     This is disingenuous. Not only was the jury provided with the definition of suicide through the testimony of the medical examiner, but during closing arguments plaintiff's attorney made the following statement to the jury while addressing the topic of the special interrogatory:

> "You'll be given what's called a special interrogatory. The special interrogatory will say prior to Roberto Garcia's death, was it reasonably foreseeable to [defendant] that he would commit suicide or act in a self-destructive manner on or before April 21, 2004? So what does that mean? No one knows for sure why Roberto Garcia went out the window. *Some have said it's suicide. Some have said it's elopement.* All have said no one knows for sure. *** *Either way, it's self-destructive.* Either way, the harm was caused. So this question really asks both *** was it foreseeable to them? Was it reasonably foreseeable?
>
> Again, the test isn't did they know for sure that this exact thing was going to happen on this day. The test is was it reasonably foreseeable? Should they have known enough that they should have taken precautions, simple precautions, to prevent Roberto Garcia from going out the window. For all the reasons we talked about, the answer to both of these questions should be yes." (Emphasis added.)

¶ 54     Plaintiff asserts that we should disregard this argument, pointing out that the arguments of counsel are not evidence. However, as plaintiff concedes in his own reply brief, the test for construing the meaning of a jury instruction "is not what meaning the ingenuity of counsel can at leisure attribute to the instructions, but how and in what sense, under the *evidence before them and the circumstances of the trial*, ordinary men acting as jurors will

understand the instructions." (Emphasis added.) *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207, 213 (1927), *quoted in Hulke v. International Manufacturing Co.*, 14 Ill. App. 2d 5, 52 (1957). The mere fact that the jury did not receive specific definitions of all of the words in the interrogatory does not mean that it is automatically confusing. Moreover, plaintiff's own counsel argued to the jury at trial that the special interrogatory did in fact cover the very theory that plaintiff now claims on appeal was not covered. Based on plaintiff's own explanation of the interrogatory at trial, any reasonable juror would understand plaintiff's argument to mean that a negative answer to the interrogatory would be fatal to plaintiff's case.

¶ 55 As we held in *Hooper* and reiterate here, the interrogatory is in proper form. See *Hooper*, 366 Ill. App. 3d at 7-8. The trial court was correct to give it to the jury when defendant requested it.

¶ 56                           III. CONCLUSION

¶ 57 The jury's special interrogatory answer that Roberto's death was not foreseeable is irreconcilable with a general verdict in plaintiff's favor, and the interrogatory is in the proper form. The trial court was therefore correct to give the interrogatory and to enter judgment in defendant's favor based on the jury's answer to it.

¶ 58 Affirmed.